## LOUIS BASTRUP *et al.*

### *v.*

## THOMAS PRENDERGAST *et al.*

*Opinion filed April 17, 1899—Rehearing denied June 7, 1899.*

1. MECHANICS' LIENS—*when wife is estopped to deny lien on her lots under husband's contracts.* A wife who, with knowledge that her husband has contracted in his own name for the erection of a building upon her lots, assists in procuring the work to be done under such contracts without disclosing her title to the contractors, is estopped to assert such title to defeat their mechanics' liens, although it appears of record.

2. SAME—*effect of failure of contract to describe lots.* The failure of a contract to particularly describe the lots upon which a building is to be erected will not defeat a mechanic's lien, where the lots are correctly described in the notice or claim for lien and in the uncontradicted allegations of the pleadings, which are sustained by the evidence, and where all parties interested understood what lots were meant, the materials being furnished and the building erected upon that understanding.

3. SAME—*when flat buildings will be regarded as one structure.* Flats erected on adjacent lots of the same owner will be held to be one building, although the division wall rises above the roof and there are separate entrances, where they are erected as one structure and under one contract and at the same time, there being a door through the basement wall through which steam pipes pass heating the building with one furnace, and a porch with an unbroken roof which extends entirely across the rear.

*Prendergast* v. *McNally,* 76 Ill. App. 335, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

RICHARD PRENDERGAST, and BASTRUP & O'NEILL, for appellants.

MASTERSON & HAFT, H. F., F. A. & H. F. PENNINGTON, G. LANGHENRY, and JAMES F. DILLON, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

With proceedings to enforce mechanics' liens instituted by the appellees and others in the circuit court of Cook county, a bill afterward filed by the appellants in the superior court was consolidated, and the two causes proceeded to final decree in the circuit court as one case. In the final decree it was found that as to the claims of the appellees in controversy here, appellees were not entitled to any lien, but that appellants had a lien on the property to the extent of their mortgage debt. The appellees took their appeal to the Appellate Court, where the decree was reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the pleadings of the claimants of mechanics' liens for the amount found due them and of the dates found by the circuit court, thus establishing their liens which had been denied by the circuit court and fixing the amounts due as found by that court. The effect of this judgment

is to give appellees precedence over the mortgage lien of the appellants.

If appellees were entitled to a lien at all they were entitled to a preference over appellants, inasmuch as the mortgage was given after the mechanics' liens attached. Appellants, therefore, have the right to insist, on this their appeal, that appellees have no lien. These mortgagees are the only appellants here, the owners of the property having acquiesced in the judgment of reversal.

Catherine McNally was the owner of the property, which consisted of two lots in Chicago together having a frontage of 48 feet and 7¾ inches on Fifty-fifth street and extending back on Wright street 140 feet, and the public records showed title in fee in her. She and her husband, John McNally, resided in a frame house on these lots as their home. In the latter part of the year 1893 appellee Norton prepared plans, at the request of John McNally, for a building covering both lots, to be used as stores below and flats above. These plans were shown and explained to Catherine McNally by Norton, the architect, at the request of John McNally. She decided that the building would be too expensive, and the plans were afterward, in January, 1894, changed to meet her views, so as to provide for a smaller building covering the front part of the lots and extending back only 55 feet and six inches. For the construction of this building John McNally entered into contracts under seal in his own name with various contractors and mechanics, including the appellees except Norton, in which contracts McNally described himself as owner, but the property was not therein in any way described or located. Before the construction of the building was entered upon, and on February 13, 1894, Catherine McNally made a written application to Loeb & Gatzert for a loan of $13,000, to be secured by a deed of trust on the premises, the money to be used in the erection of the building, and stating that the money might be paid out by Loeb & Gatzert, at their option, for

labor, materials, etc., and if the amount should prove insufficient for the erection of the building she would supply the deficiency from her own funds. In this application she described in detail the character of the building to be erected, stating also that it was to be used as a residence for herself and her husband. The holders of the obligations for this loan were not parties to the suit, and it does not appear what amount of money was advanced upon it, except that they advanced $1000 to Burkhardt & Sons and about $400 to Norton, and this loan, or the application for it, is important here only as tending to connect Catherine McNally with the construction of the building, and as bearing upon the allegation that she is estopped by her conduct from claiming that her said property is not subject to the liens sought to be established and enforced. The frame dwelling occupied by Catherine and John McNally was moved to the rear of the lots and faced on Wright street, and was occupied by them during the construction of the building in front. Without rehearsing the evidence, it shows that she observed the progress of the work, frequently inspecting it; that important changes were made and contracts entered into in accordance with her directions, and there can be no doubt, when all the evidence is considered, that she fully understood and authorized all that was being done by the appellees in doing the work and furnishing the materials for which the liens are claimed. John McNally was insolvent, and she knew it, and knew the building could be paid for in no other way than by moneys secured by liens upon the property. But while the evidence shows that appellees did not in fact know that she, and not her husband, was the owner of the lots, it does show that she was such owner and that it so appeared from the records of deeds in the recorder's office of Cook county, and that appellees made no examination of such records until after the work was done. Inasmuch as the contracts were with John McNally only, and under his seal, the only question,

as we view the case, is whether or not Catherine McNally is estopped from claiming title in herself, as against appellees' right to liens on the property.

The contracts disclosed no question of agency and Catherine McNally was not in any way mentioned in them. She could not sue or be sued on them as an undisclosed principal, and as the law in force when these liens are claimed to have attached required that the contract, whether expressed or implied, should be made with the owner of the property, her property was not liable, under the contracts, on proof merely that she was principal and that her husband acted as her agent. (*Walsh* v. *Murphy*, 167 Ill. 228, and cases there cited.) The proof given was inadmissible to show that in making the sealed contracts with appellees John McNally acted as the agent of his wife, the owner of the property, for the purpose of holding her liable as principal, but in so far as it tended to prove that she aided and abetted John McNally in holding himself out to appellees as the owner of the property and induced them to act upon that representation, thus operating to estop her from claiming title as against appellees, it was admissible. But the mere fact that she stood by and permitted her husband to construct the building on her property, and to enter into contracts for the purpose in his own name without objection on her part and without informing appellees that she was the owner of the lots, would not, of itself, if she did not know that he represented himself as owner, show any fraudulent conduct on her part from which an estoppel would arise. (*Campbell* v. *Jacobson*, 145 Ill. 389.) Her title was of record, and if the appellees saw proper to improve her property under contracts with her husband without examining the records or without inquiring of her as to the title, she would not be estopped from asserting her title as against their claim for a lien for the improvements unless her conduct was such as to amount to a fraud, actual or constructive, upon appellees in claiming

title in herself after the work was done. Thus, in *Campbell* v. *Jacobson, supra,* (a case similar, in many respects, to this except as to allegations of fraud,) where it was held that no lien attached to the wife's land, it was said that there was nothing in the conduct of Mrs. Jacobson which called for the application of the doctrine of estoppel, and that "if she had withheld her deed from record until after the contract had been entered into, as was the case in *Schwartz* v. *Saunders,* 46 Ill. 17, thus placing it in the power of her husband to hold himself out to the world as the owner of the property, *or if she had fraudulently permitted her husband to represent himself as such owner,* as appeared to be the case in *Oglesby Coal Co.* v. *Pasco,* 79 Ill. 164, the case would doubtless have been different. But nothing of that kind is shown." In that case there was nothing in the pleadings or the evidence under which the doctrine of estoppel could be applied, and in this respect that case is different from this. Here it was a question of fact pertinent in the case whether or not she had knowledge that John McNally held himself out to the appellees as the owner of the property, and permitted him to contract as owner with appellees for the work and materials to be used in constructing the building on her property. Both husband and wife resided upon the premises, and we are of the opinion that the evidence is sufficient to charge her with knowledge that in making his contracts with the builders her husband represented himself as owner of the property and that they relied upon that representation in doing their work and furnishing the materials. While an examination of the public records would have disclosed that the title of record stood in her, still it cannot be doubted that had she informed appellees that her husband was the owner of the property they would have been justified, as against her, in relying upon her statement without examining the records, and she would have been estopped, after the work was done, from asserting her own title as against her claim for a lien.

It was a fraud upon appellees for John McNally to obtain their work and materials in the construction of the building upon his wife's land under representations that he was the owner, and if she, with knowledge of such false representations of ownership, assisted in procuring the work to be done under the contracts without disclosing to appellees her title to the property, she was as much a party to the fraud as if she had falsely stated to them that her husband was the owner of the property.

Appellants say that appellees should have examined the records or inquired of Catherine McNally as to the ownership of the property. This would ordinarily be correct, but in this case such action was rendered unnecessary by the false representations of McNally, connived at by his wife. If husband and wife are in possession of land the title whereof is in the wife, and a third person is about to purchase from the husband upon his representation that he is the owner, and the wife, knowing this, stands by and encourages the sale and urges the purchaser to buy, and the purchaser, relying upon such representations, buys and takes title from the husband without knowing the title is in his wife, she would be estopped from setting up her own title against the purchaser, for otherwise she would be perpetrating a fraud upon him,—and this would be so even if her title appeared of record. Thus it is said in 2 Herman on Estoppel and Res Judicata (sec. 964): "When a title has been once duly recorded no responsibility will arise from a failure to take further or immediate steps to warn subsequent purchasers, who may fairly be presumed to have taken the means pointed out by law and acquired all the knowledge which it is important for them to have. But this is applicable only in the case where the foundation of the estoppel is in silence or acquiescence, for where the owner concurs in a sale by participating in it at the time, it becomes his own act, and he certainly cannot be allowed to make his own good faith a reason for throwing his

loss upon third persons who are equally innocent." And the case is, of course, stronger where the owner is guilty of fraud, actual or constructive. And in *Fisher* v. *Mossman*, 11 Ohio St. 42, it was said, if a mortgagee of real estate whose mortgage was of record stood by at a sheriff's sale of the property and kept silent as to his lien he would not be estopped, but the case would have been different if he had said or done anything to deceive or mislead the purchaser. Also in *Hill* v. *Blackwelder*, 113 Ill. 283, this court said that the rule that the estoppel would not arise where the title of the party sought to be estopped appeared of record, applies "only in cases where the foundation of the estoppel is in silence, and omission to give notice of one's right, and not in a case where the land owner has actively encouraged and induced the injured party to act."

In *Anderson* v. *Armstead*, 69 Ill. 452, this court said: "The law is familiar that where the owner of property holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent parties are thus led into dealing with such apparent owner or person having the apparent power of disposition, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they have directly dealt, but they are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power he caused or allowed to appear to be vested in the party upon the faith of whose title or power they dealt." It is true, as said by appellants, that the principal ground on which it was held in that case that the wife was estopped was that her deed, dated shortly before the contract for the work, was not filed for record until four days after the contract was made, and that she did not disclose her title, although she knew of the work as it progressed and received the benefit of it, while in the case at bar Catherine McNally

had owned the property for many years and it so appeared from the public records. It need not be stated that estoppel by conduct does not rest on any specific fact or facts, but will arise from any act or conduct of the party sought to be estopped which justifies the application of the general principle.

It is contended, however, that there is no evidence that Catherine McNally knew that her husband held himself out as owner, but we are of a different opinion. It is said, also, that the evidence shows that at least one of the appellants testified that he did not rely on her for payment but relied upon her husband. If he relied on ownership in the husband, as the contract represented, it would not be expected that he would rely on the wife, and there was no testimony that appellants did not rely upon their right to a statutory lien upon the property.

It is next said that the property was not described or located by the contract, and the right to a lien must fail for that reason. It was alleged in the pleadings that the contract was made with reference to the lots in question, and the evidence supports the allegations. There was no contention to the contrary, either in the pleadings or in the evidence. All the parties in interest so understood, and the material was furnished and the house was built on the strength of that understanding, and the notice or claim for a lien filed for record properly described the property. We cannot hold, under the circumstances, that the mere omission of a description or designation of the property in the contract can defeat a lien otherwise established. All the parties in interest interpreted the contract as referring to this property where the McNally's lived and of which John McNally claimed to be the owner. The case, in this respect, is distinguishable from *Wendt* v. *Martin*, 89 Ill. 139, and the view we have taken finds support in *Martin* v. *Eversal*, 36 Ill. 222, *Power* v. *McCord*, id. 214, and *Clark* v. *Manning*, 90 id. 380.

179—36

The next point made by appellants is, that the lien cannot be established or enforced because the labor was done and materials furnished on two different buildings, each under a different roof, located on a different lot from the other and divided by a partition wall rising above the roof, there being no apportionment in the claims for liens, nor in the pleadings and evidence, as to the amount due on the separate buildings. The so-called "buildings" were erected as one structure, located on the corner of Fifty-fifth and Wright streets. The work on the whole progressed together under the same contract, with the same materials. The side on Wright street was more expensively and elaborately finished than the other. There were separate entrances in front. There was a door in the partition wall in the basement, and through this opening steam pipes passed so as to heat the entire structure with one furnace. At the second floor there was a jog in the partition wall (which wall so far was upon the lot line between the two lots) so as to form a small court, into which windows opened from each side. There was a rear porch extending across the entire structure with one continuous and unbroken roof. Under this evidence we are of the opinion that no apportionment was necessary, and that the structure must be regarded as one building, and not two separate and distinct buildings.

We find no substantial defects in the statements for liens filed by the respective claimants and their verification, and cannot hold with the contention of appellants that appellees failed to comply with the statute in this respect.

We are of the opinion that the judgment of the Appellate Court is correct, and it will therefore be affirmed.

*Judgment affirmed.*