(No. 18726.—Decree affirmed.)
FLORENCE LOWENBERG *et al.* Appellants, *vs.* FRANK W.
BOOTH *et al.* Appellees.

*Opinion filed June 23, 1928.*

1. HUSBAND AND WIFE—*husband's payment on wife's mortgage
is presumed a gift.* Where a wife takes title in her own name and
executes a note and mortgage for part of the purchase price, pay-
ments made by the husband on the note are presumed to have
been made as a gift, and to overcome this presumption the bur-
den is on the parties claiming that the husband had a beneficial
interest to prove that a gift was not intended and that there is
an obligation on the wife's part to hold the property in trust for
the husband.

2. TRUSTS—*fraud is necessary to create constructive trust.* To
create a constructive trust there must have been some fraud, active
or passive, in procuring the conveyance to the alleged trustee, and
such trust can be established only by clear and convincing proof.

3. ESTOPPEL—*when silence does not estop assertion of owner-
ship.* Where one knowingly suffers another to purchase, in his
presence, property to which he has a claim of title which he will-
fully conceals, he will be deemed to have waived his claim and will
not thereafter be permitted to assert it against the purchaser; but
silence does not create an estoppel unless there is a duty to speak,
and where an owner's title is shown by the public records a pur-
chaser cannot assert against the owner an estoppel founded on his
silence and acquiescence.

4. BUILDING RESTRICTIONS—*when wife is not estopped to assert
title in defense of suit to enjoin violation of husband's building
line agreement.* Where a building line agreement is executed by
a husband while the title to the property involved is of record in
the wife's name, the wife is not estopped to assert her title in
defense of a suit to enjoin violation of the restriction by her les-
see, where there is no evidence that the wife connived at the hus-
band's false claim of title when he joined in the agreement or that
she knowingly permitted him to mislead the complainants by allow-
ing him to deal with the property as his own.

5. SAME—*when Statute of Frauds is a complete defense to suit
to enjoin violation of building restriction.* The moral wrong of
refusing to be bound by an agreement because it does not comply
with the Statute of Frauds does not authorize the application of
the doctrine of equitable estoppel, and a wife who is the record

owner of property may interpose the statute in defense of a suit to enjoin violation of a building line agreement where the agreement was not signed by her but by her husband, who had no written authority to sign it.

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

PINES, MORSE & STEIN, (ALVIN E. STEIN, of counsel,) for appellants.

EKLUND, ERICKSON & BERTRAM, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed a bill in the superior court of Cook county seeking an injunction to restrain appellees from building a one-story store building on lot 83 in Germania addition to Evanston. The bill alleges appellees are about to erect a store building on said lot extending to the front lot line; that to do so would be in violation of a certain building line restriction agreement entered into by the owners of lots 81, 82, 83, 84, 85 and 86, by which agreement all buildings are restricted to a line twenty feet from the front of the lots; that the agreement was executed on November 20, 1913, and was signed by appellee Frank W. Booth, husband of appellee Laura F. Booth, in his own name, for lot 83, and that he was either the equitable and beneficial owner of that lot, the legal title to which is in Mrs. Booth but which she held for her husband, or she was the legal owner of the lot and had appointed him as her agent in the management of her real estate and authorized and permitted him to hold himself out as the legal and equitable owner of the lot. The agreement set out in the bill covenants that the signers thereof, and their heirs and assigns, will not permit any building, erection or structure on the respective lots owned by the signers, within twenty feet of the front of such lots. The contract was

recorded in the recorder's office of Cook county on January 21, 1914. The bill alleges that Booth, at the time of the execution of the contract, fraudulently held himself out to the owners of the other lots and to the public as the owner of lot 83; that Mrs. Booth at the time of the execution of the contract, or immediately thereafter, had knowledge of the false representations of ownership by Booth and of the making and execution of the contract by him as such alleged owner, and knew that the same would be recorded and that other persons would be induced to purchase some one or more of the other lots, the owners of which had joined in the execution of the written contract relying upon and believing the representation as to ownership in Booth to be true, but that she at no time in anywise revoked or repudiated his act in executing the contract and in making the false and fraudulent representations but in all respects ratified and approved his acts and was and is guilty of fraud in that behalf and is estopped from denying that lot 83 is subject to the twenty-foot building line restriction; that thereafter appellants, who are the present owners of lot 86, purchased the same relying on the contract and built thereon a three-story brick building and two garages in compliance with the building line restriction, and that up to August 31, 1927, the agreement had been faithfully observed and complied with and valuable improvements had been made on all the lots except lots 83 and 85, which were vacant, and that these improvements were made in accordance with the lot line restriction; that on September 2, 1927, appellants learned that Mrs. Booth had leased the premises to appellee Sarlas and had authorized and permitted him to erect a building on the lot in violation of the agreement; that on September 1, 1927, excavation was commenced over an area covering practically the entire lot 83 for the erection of a one-story store building, consisting of two stores, contrary to the building line contract, and that if permitted to complete the building the property in that

block would be greatly depreciated in value and irreparable injury would result to appellants; that Booth had on various occasions requested appellants to agree to rescind the agreement but they refused to do so, and had, prior to the filing of the bill, requested appellees to refrain from continuing the building in the manner proposed but that such request was denied. The prayer of the bill is for an injunction restraining appellees from erecting, placing or permitting any building or structure on lot 83 in violation of the contract.

Charles J. Sarlas filed an answer, setting up his lease from Laura F. Booth; denying that Frank W. Booth had anything to do with his activities on the premises; alleging that before entering into the lease he ascertained that Mrs. Booth was the legal, equitable and beneficial owner of lot 83 and that such ownership existed prior to November 20, 1913; that Booth had only an inchoate right of dower in the lot; that Mrs. Booth was not a party to the alleged building line agreement and not bound thereby.

Laura F. Booth answered. She denies that Frank W. Booth was the equitable and beneficial owner of lot 83 but avers that she was the legal, equitable and beneficial owner of that lot on the date of the contract and that he had no interest therein except his inchoate right of dower; denies that she at any time appointed her husband to act as her agent in the management of said real estate or authorized him to hold himself out as the equitable owner of the lots; denies that he fraudulently held himself out to persons named in the bill and to the public as the owner of lot 83, and denies that she at the time of the execution of the contract, or immediately thereafter, had actual knowledge of any representations of ownership by him or that any false or fraudulent representations were made by him regarding the ownership of the lots. Her answer also sets up section 2 of the Statute of Frauds and claims the benefit of that statute. She avers that the making and entering into of the

contract or lease between herself and Sarlas was her own act and undertaking, done in her own right, and that Booth had nothing to do therewith or with any of the activities of Sarlas in and about the construction of a building on the lot. She denies that irreparable injury will result. The answer of Frank W. Booth was substantially the same as that of Laura F. Booth.

Exceptions were filed to that portion of the answer of Laura and Frank W. Booth claiming the advantage of the Statute of Frauds. These exceptions as to Booth were sustained and were overruled as to Mrs. Booth. Replications were filed and a hearing of evidence was had thereon before the court. The chancellor dismissed the bill for want of equity. Appellants bring the cause here for review, contending, first, that the decree was erroneous for the reason that Mrs. Booth is bound by the provisions of the contract upon either of the following theories: (a) That her husband was the equitable owner of lot 83, or (b) that she is equitably estopped from denying that he was such owner; second, that the Statute of Frauds is not available as a defense to this proceeding; and third, that the court erred in refusing to permit proper evidence offered by appellants and admitting improper evidence on the part of appellees.

Evidence was offered on the part of appellees to show that lot 83, at the time the agreement concerning the building line restriction was executed, stood in the name of Laura F. Booth; that she purchased the same in her own name, paid for it, in part, out of money she received from her father's estate, and gave a mortgage securing her notes for the unpaid portion of the purchase price. It was shown by the evidence that a part of the principal and interest of the notes, together with certain taxes and special assessments, were paid by Frank W. Booth. He testified that the money with which he paid these items belonged to Mrs. Booth. Appellants called W. Strohm as a witness, who testified that in the month of November, 1913, he, being the

then owner of lot 82, had a conversation with Booth and asked him if he was the owner of lot 83, and that Booth replied that he was. He asked him whether he would sign a petition to have a building line established, and that he replied he would think about it; that after calling Booth four or five times he said he would sign it; that Strohm took the contract to Booth's office and Booth signed it. There is no dispute as to the signatures of any of the owners of the six lots. Booth, when called as a witness for appellants, admitted signing the contract but denied that he had a conversation with Strohm prior thereto in which he told Strohm that he was the owner of the lot. He testified that he had no conversation with his wife before he signed the contract but supposed that he afterward told her about it. He further testified that at his wife's request he had called upon one of the lot owners and asked for a release of the agreement, which was refused. The lease to Sarlas contains a provision that in case the lessee be deprived of the possession of part, but not all, of the demised premises, then a proportionate abatement of the rent shall be made in the proportion in which the value of that part of the premises from which the lessee shall be ousted shall bear to the value of all the demised premises.

Appellants sought to show that while the title to the property was taken in the name of Laura F. Booth it was not paid for by her and that she had no means of paying for it. For this purpose appellants introduced the books of the bank where the Booths had their account, for the purpose of showing that there was not a sufficient balance in the account of Mrs. Booth at the time the lot was purchased to pay for the same. Mrs. Booth testified that part of the purchase price paid at the time the lot was purchased was paid in cash and part by check, and, as we have seen, Booth testified that the money paid for the lot was hers. We are of the opinion that the court did not err in finding from the evidence that the lot belonged to Mrs. Booth. The

evidence shows clearly that she signed the note and mortgage for part of the purchase price, and while the evidence shows that Booth made payments on the note, the presumption prevails, until it is rebutted by evidence, that the payments made by him were a gift to his wife. To overcome such presumption it must appear that there was an obligation on her part to hold the property in trust for him. (*Delfosse* v. *Delfosse,* 287 Ill. 251; *Pool* v. *Phillips,* 167 id. 432; *Fizette* v. *Fizette,* 146 id. 328; *Smith* v. *Smith,* 144 id. 299.) The burden of proof was on appellants to show that a gift was not intended. (*Smith* v. *Smith, supra;* Perry on Trusts, sec. 145, p. 152.) This appellants failed to do.

Nor is there any evidence to show that Laura F. Booth held title in trust for her husband. To create a constructive trust there must have been some fraud, active or passive, in procuring the conveyance. (*Delfosse* v. *Delfosse, supra; McHenry* v. *McHenry,* 248 Ill. 506; *Ryder* v. *Ryder,* 244 id. 297; *Lantry* v. *Lantry,* 51 id. 458.) Such a trust can be established only by clear and convincing proof. (*Pool* v. *Phillips, supra;* Perry on Trusts, p. 147.) The proof in this record does not establish that Mrs. Booth holds title in any capacity other than as the absolute owner in fee simple. Nor is it shown by the evidence that Booth had authority to bind his wife as to the building line agreement, and as to her, therefore, the agreement was without force.

Appellants urge that Mrs. Booth is estopped by her silence and acquiescence in his acts in connection with the lot to deny that her husband was the owner thereof, as he falsely represented. The record contains no evidence of any acts on her part indicating acquiescence in the contract, or that he acted as her agent in the management of the property other than paying taxes and on one occasion securing the services of an attorney to procure a reduction of a special assessment against the property. No one ever inquired of her, prior to the execution of the agreement,

whether she or her husband owned the lot. An examination of the records would have revealed that she was the owner. Appellants seek to base their estoppel against her on the fact that she remained silent when she should have made known her rights. There is no evidence in the record that she had any knowledge of her husband's claim of ownership, if any was made, prior to the execution of the agreement. The general rule is, that in order that mere silence operate as an estoppel, those claiming an estoppel must not have had the means of ascertaining the true state of the title by reference to the public records. (*Thor* v. *Oleson,* 125 Ill. 365.) Generally, when the avenues of information are equally open to both parties, silence will not constitute an estoppel. (*Mills* v. *Graves,* 38 Ill. 456.) Appellants rely on *Bastrup* v. *Prendergast,* 179 Ill. 553. In that case the court found that the wife had connived at her husband's fraud, and it was held that while it is the general rule that one seeking an estoppel by silence should either have examined the records or inquired of the one against whom the estoppel is sought as to the ownership of the property, yet in that case such action was rendered unnecessary by the fact that the wife, in whose name the title to the property rested, connived at the false representations of her husband. There is no evidence of such connivance here, or that Mrs. Booth knowingly permitted her husband to deal with the property in such a way as to mislead appellants. That case and others cited by appellants lay down the rule that in order to invoke the doctrine of estoppel the owner must knowingly mislead others into dealing with one acting as the owner of the property. In this case the dealings of the other property owners were entirely with Booth. They made no attempt to examine the records.

In order to invoke the principle of equitable estoppel six elements must appear: (1) Words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2)

the party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him; (4) the party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel or by the public generally; (5) the representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel; and (6) the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof. (Eaton on Equity,—2d ed.—p. 150.) From what we have said it is readily seen that proof of these elements is lacking in this case. Silence does not create an estoppel unless there is a duty to speak. It is a general principle that where one knowingly suffers another, in his presence, to purchase property to which he has a claim of title which he willfully conceals, he will be deemed to have waived his claim and will not thereafter be permitted to assert it against the purchaser. But this rule does not apply where the public records would disclose the ownership of the property. In such a case the purchaser of the property cannot assert against the owner an estoppel founded on his silence and acquiescence. (Eaton on Equity,—2d ed.—p. 151.) Mrs. Booth was not estopped to claim ownership in the property.

We come, then, to the third point raised by appellants,—that is, that the Statute of Frauds is not a defense in this case. An examination of the record fails to disclose that Booth was acting as the agent of his wife, or that she authorized him, either orally or in writing, to sign the restriction line agreement. Section 2 of the Statute of Frauds (Smith's Stat. 1927, p. 1474,) provides: "No action shall be brought to charge any person upon any contract for the

sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party." Appellants cite numerous cases in support of the contention that the Statute of Frauds may not be availed of for the purpose of accomplishing a fraud. This is the rule. Where one seeks to invoke the statute after having by acts, representations or promises induced another party to do or forbear the doing of any act, so that such acts or representations constitute a fraud on the other party, the Statute of Frauds may not in such case be utilized as a defense, and the cases cited by appellants so hold. There is in this record, however, no proof that Mrs. Booth by any act, representation or promise held out to appellants or to the public that her husband was her agent or had any authority to sign the agreement in question. There is therefore no evidence of fraudulent misrepresentation on her part inducing lot owners to sign the agreement or to in any way so act as to estop her from seeking the defense of the Statute of Frauds. The moral wrong of refusing to be bound by an agreement because it does not comply with the statute does not authorize the application of the doctrine of equitable estoppel. (*Kelly* v. *Fischer,* 263 Ill. 184.) So where a man makes an oral contract to sell lands, which he afterwards repudiates and relies on the Statute of Frauds as a defense to an action for specific performance, he may be guilty of a wrong in the domain of morals but not of such a fraud as relieves against the application of the statute. (*Koenig* v. *Dohm,* 209 Ill. 468.) In this case, as we have seen, there were neither oral nor written representations on the part of Mrs. Booth that her husband was authorized to sign this building line restriction and no act on her part which would estop her from claiming the benefit of the Statute of Frauds. As

the agreement was not signed by her or by anyone authorized by her in writing so to do, the Statute of Frauds was a complete defense. *Kelly* v. *Fischer, supra; Fletcher* v. *Underwood,* 240 Ill. 554; *Lasher* v. *Gardner,* 124 id. 441.

Appellants contend that the chancellor erred in his rulings on the admissibility of evidence. We have examined the abstract and find no reversible error in those rulings.

. The decree of the superior court is affirmed.

*Decree affirmed.*