17262

SPARTANBURG HOTEL CORPORATION, Respondent, v.
ALEXANDER SMITH, Incorporated, Appellant

(97 S. E. (2d) 199)

*Messrs. Williams & Henry,* of Greenville, *for Appellant,*

3

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-
ville, *for Respondent,*

February 14, 1957.

Moss, Justice.

This is an action for breach of an express oral warranty. On October 16, 1950, the Spartanburg Hotel Corporation, the respondent herein, which operates the Cleveland Hotel in the City of Spartanburg, South Carolina, upon the solicitation of an authorized representative of Alexander Smith, Inc., the appellant herein, placed an order for a large quantity of green carpeting, known as "Graethorne", for use in said hotel. It is also asserted that at the time of the placing of said order that the appellant, as a part of the transaction, gave an express oral warranty that this carpeting so ordered was of first quality and colorfast and would not fade, and such was suitable for the needs of the respondent. It is further asserted that representation and warranty were made by the appellant direct to the respondent, and that in purchasing said carpeting the respondent relied upon such representation and warranty. Testimony shows that during the course of the placing of the order for the carpeting, that the appellant could not sell direct to the respondent but would have to bill the respondent for the purchase price of the carpeting through some one in Spartanburg, and such representative suggested the furniture firm of Hammond-Brown-Jennings Co. It should be here stated that the order as placed by the respondent was signed by J. Mason Alexander, the manager thereof, and delivered to the representative of the appellant. It is undisputed in the testimony that the respondent did not buy through the local furniture company, had

no contract with it, and did not even know any representative of the local furniture company.

The record shows that the carpeting was shipped direct by the appellant to the respondent and that on January 6, 1951, Hammond-Brown-Jennings Co. billed the respondent for $2,740.92, the purchase price of said carpeting. Payment of said invoice was made by the respondent to the Spartanburg furniture firm and it deducted a 5% commission, remitting to the appellant $2,603.87.

The respondent alleges a breach of the appellant's express oral warranty to it, it being asserted that the carpeting began to fade, that the colors were not fast and it was wholly unsuitable for the needs and purposes of the respondent. Testimony of the respondent is that the color of the carpeting began to fade approximately six months after it was received, and it took until about two years for all of it to go bad.

It further appears by the testimony of the manager of respondent that complaint was made by the respondent to the appellant of the defective carpeting and as a result a representative of the appellant inspected the carpeting and found that the color of the carpeting was fading and was told "Take it up, we have had that trouble, and the company will do the right thing; they will adjust it, you will hear from the company." Thereafter, the appellant sent two checks totalling $682.50, payable jointly to Hammond-Brown-Jennings Co. and the Cleveland Hotel. These checks were endorsed by Hammond-Brown-Jennings and delivered to the Cleveland Hotel, it being asserted by the appellant that such checks were given in full and complete satisfaction and settlement of the claim of the respondent for the alleged defects in the carpeting. J. Mason Alexander, manager of the respondent's hotel, testified upon receipt of the checks for $682.50, he immediately contacted a representative of the appellant and that it was agreed that in accepting the checks it was not a complete and full settlement of the respondent's claim for damages for the defects in the car-

peting. He testified that after depositing the checks, and at the request of the appellant, he sent a sample of the defective carpeting, together with a sample of the cleaning fluid used by the hotel to clean its rugs and carpeting to C. H. Masland & Sons, the manufacturer, according to the answer of the appellant, of the carpeting sold to respondent.

The appellant, by its answer, denied any breach of warranty or that the carpeting was defective as alleged in the complaint. It further defends on the ground that the carpeting referred to in the complaint was purchased by the respondent from Hammond-Brown-Jennings Co. and not from the appellant, and accordingly there was no privity of contract between the respondent and appellant. The appellant asserts there being no privity of contract, no right of action exists in favor of the respondent against the appellant. The appellant also alleges, by way of defense, that the payment by it to the respondent of the sum of $682.50 was in full and complete settlement and satisfaction of the respondent's claim for the alleged defects in the carpeting, and that the same constitutes an accord and satisfaction, and bars respondent's action.

This case was tried before Honorable G. Duncan Bellinger, Presiding Judge, and a jury, and resulted in a verdict for the plaintiff for the sum of $1,775.30 and $319.56 interest.

At appropriate stages of the trial the appellant made motions for a nonsuit, directed verdict, judgment *non obstante veredicto,* and alternatively, for a new trial. All of which said motions were refused.

The case is before this Court upon a number of exceptions. The appeal may be disposed of by answering the following questions: (1) Was the appellant entitled to a judgment in its favor on the ground that the contract of purchase and sale here involved was between Hammond-Brown-Jennings Co. and the respondent, and not between the appellant and respondent? (2) Was appellant entitled to judgment in its

favor on the ground of the failure to establish that the carpeting was defective? (3) Did the acceptance by the respondent of the sum of $682.50, paid by the appellant, amount to an accord and satisfaction? (4) Did the Trial Judge commit error in charging the jury as to the proper measure of damages recoverable where there had been a breach of warranty?

In the case of *Stevenson v. B. B. Kirkland Seed Co.*, 176 S. C. 345, 180 S. E. 197, 200, a warranty was defined in the following language:

"A warranty is a statement or representation made by the seller of goods, contemporaneously with and as part of the contract of sale, having reference to the character, quality, kind, variety, or title of the goods. A warranty is express when the seller makes an affirmation with respect to the article to be sold, pending the contract of sale, upon which it is intended that the buyer shall rely in making the purchase. A warranty is implied when the law derives it by implication or inference from the nature of the transaction. In order for an express warranty to exist, there must be something positive and unequivocal concerning the thing sold, which the vendee relies upon, and which is understood by the parties, as an absolute assertion concerning the thing sold, and not the mere expression of an opinion; representations which merely express the vendor's opinion, belief, judgment, or estimate do not constitute a warranty. It is not always easy to determine whether certain language does or does not amount to a warranty. The language used is sufficient to constitute an express warranty if the words used import an undertaking that the property is what it is represented to be, or an equivalent to such undertaking. 55 C. J. 673."

We can conclude from the testimony that an express oral warranty was made by the appellant to the respondent. It is in the record that the representation was made that the carpet was of first quality, colorfast and

would not fade and such was suitable for the needs of the respondent. The complaint alleges a breach of this warranty.

The appellant asserts that the contract of purchase and sale here involved was between Hammond-Brown-Jennings Co. and the respondent and not between the appellant and respondent. It is urged that since there was no privity of contract between the respondent and appellant, that an action will not lie by the respondent against the appellant for a breach of warranty.

In the case of *Mauldin v. Milford,* 127 S. C. 508, 121 S. E. 547, 551, this Court held:

"But the warranty of title of personal property does not run with the property. Such warranty 'is personal to the purchaser of the 'property to whom the warranty is made, and a subsequent sale of the property by such purchaser does not operate to vest in a subsequent purchaser any right of action which the former might have against the original seller for a breach of the warranty.' 24 R. C. L. 159, § 432; note, 51 L. R. A. (N. S.), 1111, collating and reviewing the authorities. As was said by Mr. Justice Lamar in *Smith v. Williams,* 117 Ga. 782, 45 S. E. 394, 97 Am. St. Rep. 220:

" 'A warranty does not run with the article sold. If the title is not good, the vendee must look to him from whom he purchased, and to whom he paid the consideration. * * * The remedy of the subsequent purchaser is against his immediate seller, and not against the original owner.'

"The rule thus stated is obviously predicated upon the theory that there is no such privity, either of contract or estate, between the remote sub-purchaser and the original seller as will support such a right of action. Its application, of course, is not to be extended to causes where there has been a novation of the contract of warranty, and where the liability of the original seller and warrantor, such as the manufacturer of food products, articles inherently noxious or dangerous, etc., rests essentially upon the doctrine of

negligence. See 51 L. R. A. (N. S.), 1111; 19 L. R. A. (N. S.), 923."

There is evidence in the record from which the jury could have concluded that the appellant contracted directly with the respondent for the sale of the carpeting in question, and that the method of billing the respondent for the purchase price through the Hammond-Brown-Jennings Co. was a part and parcel of the contract and made for the benefit of the appellant. We repeat that the testimony shows that the respondent had no connection whatsoever with Hammond-Brown-Jennings Co. in the making of the contract.

There is still another reason why the motions of the appellant should not have been granted. There was evidence from which the jury could have found that the appellant made a warranty of the carpeting directly to the respondent even though the sale was made by a dealer operating as an independent contractor. Attention is directed to the case of *Studebaker Corp. v. Nail,* 82 Ga. App. 779, 62 S. E. (2d) 198, 201. This was a suit against the Studebaker Corp. for a breach of an express warranty of an automobile manufactured by it and sold by a dealer. In disposing of an appeal by the automobile manufacturer, the Court had this to say:

"It is true that a warranty of personalty does not run with the article warranted. But a manufacturer may warrant his products to ultimate purchasers. In this day of progressive and highly competitive business, a warranty of his product by a manufacturer to the ultimate purchaser of his product may be intended by the manufacturer as an added inducement to the ultimate purchaser to buy the product of that manufacturer rather than that of his competitor. The consideration for such a warranty would be the purchase by the ultimate purchaser of that manufacturer's product, which is in effect a direct purchase as it would have been if the purchaser had bought from an agent of the manufacturer instead of an independent dealer or contractor. There are many products sold today where the manufacturer warrants to the ultimate purchaser the virtues of his product and in-

tends to bind himself by such warranties. See: 'Business Practice Regarding Warranties in the Sale of Goods' by Bogert and Fink, 25 Ill. L. Rev. 400. Certainly it would be a great injustice to the buying public not to hold enforceable a warranty made by a manufacturer and relied upon by the purchasers. It is the ultimate purchaser that makes the manufacture of the product possible, the purchase by intermediate distributors and dealers being merely a means of distribution to the ultimate purchaser. This decision deals only with express warranties where a manufacturer expressly and directly warrants his products to the ultimate purchaser. We recognize the principle that implied warranties of law are imposed only as between parties in privity of contract but they are rules of law which the law imposes on contracting parties. Generally the law does not bridge the gap between the manufacturer and ultimate purchasers by implying warranties, but it throws up no barrier preventing a manufacturer from itself bridging the gap. There is no obstacle preventing a manufacturer from making a contract with an ultimate consumer to guarantee an article sold to the latter, directly or indirectly, if the elements of intention to contract and consideration are present, as they are in this case. The court has conducted extended research into the field of warranties but will not indulge in a discussion of the many questions which have arisen relative to different types of warranties and different types of relationships. The rule here announced is believed to be sound under the facts of the case."

We think there was sufficient evidence to go to the jury upon the question of whether a warranty had been made by appellant to the respondent. Hence there was no error in the refusal of the trial Judge to declare, as a matter of law, that there was no privity of contract between the appellant and respondent.

> We come now to the question of whether or not there ■ was sufficient evidence to go to the jury upon the question of whether the carpeting was defective. We

have heretofore, in a general way, stated the alleged defects in the carpeting. There is the positive testimony of witnesses for the respondent that the colors of the carpeting were not fast and that discoloration and fading had taken place. There is also the testimony that the carpeting was taken up pursuant to the instructions of an agent of appellant. Coupled with this testimony the appellant sought, by its witnesses, to show that the discoloration and fading was due to spillage of a substance of an alkaline nature in the traffic areas of the carpet or to the cleaning media used upon the carpeting. It is implicit in the testimony that there had been a change of color in the carpeting, but it was contended by the appellant that such was not due to a manufacturer's defect. We think there was sufficient evidence to be submitted to the jury upon the question of whether or not the carpeting was defective as alleged in the complaint. Hence there was no error in the failure of the trial Judge to grant the motions of the appellant for judgment in its favor upon this ground.

The appellant contends that by payment to the respondent of the sum of $682.50, such constituted an accord and satisfaction.

In the case of *Reliance Varnish Co. v. Mullins Lumber Co.,* 213 S. C. 84, 48 S. E. (2d) 653, 659, this Court announced the rule that:

"It is well established that 'an "accord and satisfaction" must contain the elements of contract, and there must be a meeting of the minds.' *Redmond v. Strange,* 203 S. C. 35, 26 S. E. (2d) 16."

In 1 Am. Jur., Accord and Satisfaction, paragraph 1, at page 215, the following definition is given:

"The statement made by Blackstone that an 'accord is a satisfaction agreed upon between the party injuring and the party injured' has been frequently approved by the courts as a satisfactory definition. However, it seems from the various applications of the doctrine of accord and satisfaction that it might more properly be said that an accord and satis-

faction is a method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof and an execution of such substituted agreement."

We recur again to the testimony. The manager of the respondent's hotel testified emphatically that he did not accept the payment of $682.50 in settlement of its claim. He further testified that upon receipt of the checks that a representative of the company told him that he did not know how they arrived at the amount but "I will take it up with them" and again this representative said "Go ahead and accept it; we are going to do the right thing about it." He also testified that as a result of this he deposited the checks. He further testified that the appellant, after the checks had been delivered, requested that they send a sample of the rug together with a sample of the carpet cleaning solution. The query arises that if an accord and satisfaction had been reached, why would the appellant be interested in obtaining a sample of the rug and also a sample of the cleaning fluid. It is in testimony by the appellant that the checks were sent in full and complete settlement of the claims asserted by the respondent and that a letter accompanied the checks stating that such represented an adjustment on the carpet. It was also testified that the manager of the respondent was to sign a copy of the letter and return it to the appellant. The manager of respondent denied ever receiving such letter and the appellant could not produce such letter, which it asserted was signed and returned by J. Mason Alexander. An examination of the checks does not show any notation thereon that they were given in full settlement of the asserted claims for defective carpeting.

We think that the Court could not declare, as a matter of law, that an accord and satisfaction had resulted from the delivery of the checks totalling $682.50. The evidence is contradictory and it was for the jury to say, under proper instructions of the court, whether or not an accord and satisfaction had been reached by the parties.

We come now to the question of whether the Court committed error in instructing the jury as to the proper measure of damages recoverable if there had been a breach of warranty. Reported charge of the trial Judge on this question is as follows:

"Gentlemen, if you find that the plaintiff has proven his case by the greater weight of the evidence or preponderance of the testimony and is entitled to recover, then he would be entitled to recover for the balance due on that account after deducting the $682.50 which would make $2,057.50, and for any freight paid out which he alleges to be $68.00 and for costs in laying the carpeting, if you find the evidence supports that contention, which would be a total sum of $2,375.50—I am a poor mathematician, but I think that is it—less any depreciation that has been shown by the evidence of the carpeting in dispute. So if you find for the plaintiff, your verdict would be, 'we find for the plaintiff in such and such an amount,' writing out that in words and not figures. I should add to that, however, he is asking for interest from the 31st day of December, 1950, which if he is entitled to recover, you could add that to your verdict—yes —or such other date as you find he is entitled to, but not behind December, 1950."

The foregoing charge would have been correct if the action had been one for the rescission of a contract, but the testimony shows that the respondent retained the carpeting purchased and sued for damages for breach of warranty.

In the case of *Liquid Carbonic Co. v. Coclin,* 161 S. C. 40, 159 S. E. 461, 464, this Court said:

"Instead of rescinding the contract, the purchaser may elect to retain the article and sue for damages for breach of warranty. In that case, the measure of damages is the difference between the actual value of the article in its defective condition, and its value had it been as warranted, * * *."

In the case of *Cannon v. Pulliam Motor Co.,* 230 S. C. 131, 94 S. E. (2d) 397, 401, which was an action for an

alleged breach of manufacturer's automobile parts warranty, Mr. Justice Oxner, speaking for this Court, said:

"As there must be a new trial, we desire to state that if the respondent is entitled to recover, the proper measure of damages, under the facts of this case, is the difference between the actual value of the car in its defective condition at the time of sale and its value if it had been as warranted. This is the general rule as to the measure of damages for breach of warranty."

It is apparent from the quoted charge of the trial Judge and the rule that has been adopted by this Court as to the measure of damages for breach of warranty, that the trial Judge's charge was erroneous. The exceptions posing this question are sustained.

We are also of the opinion that interest should not be allowed in this case because the damages recoverable for the breach of warranty, as to the quality of the subject matter of this action, are not only unliquidated but is not ascertainable by more computation. 46 Am. Jur., Sales, paragraph 749, page 876.

The judgment of the lower Court is reversed, and a new trial ordered.

STUKES, C. J., TAYLOR and OXNER, JJ., and E. H. HENDERSON, Acting Associate Justice, concur.