356 P.2d 691

James RAY, Appellant,

v.

**FIRST NATIONAL BANK OF ARIZONA,**
Phoenix, a national banking association, Appellee.

No. 6645.

Supreme Court of Arizona.

Nov. 9, 1960.

Rhodes & Killian, Mesa, for appellant.

Kramer, Roche & Perry and Ray Huffsteter, Phoenix, for appellee.

STRUCKMEYER, Chief Justice.

The First National Bank of Arizona brought this action against James Ray to collect the balance due on a conditional sales contract. Both parties filed motions for summary judgment based on the pleadings and the defendant's deposition. From an order granting the bank's motion and judgment thereon defendant appeals.

The facts material to the disposition of this cause are established in the deposition of James Ray. While they are uncontradicted, the conclusions to be drawn therefrom are a source of dispute. Briefly, defendant purchased a Bearcat Forage Harvester from William Osborne, hereinafter called seller. A conditional sales contract, covering the balance due after the down payment, was executed by defendant and this contract was subsequently assigned to plaintiff.

■ At the onset for the purpose of its motion for summary judgment, the bank concedes that the seller impliedly warranted the machine as fit to do the work for which it was purchased and that this warranty was breached. Nevertheless, the bank urges that defendant must have relied upon the warranty at the time of purchase in order to assert a breach thereof as a defense. This is the established rule in Arizona. Murphy v. National Iron & Metal Co., 71 Ariz. 323, 227 P.2d 219. Plaintiff argues that at the time of the signing of the conditional sales contract defendant had knowledge that the harvester would not satisfactorily do the work for which it was purchased; hence, that defendant waived the warranty. This assertion requires a somewhat detailed analysis of the testimony of defendant, James Ray.

■ After some discussions the machine was delivered to defendant for trial on September 2, 1955. The seller then told defendant that he had the assurance of the manufacturer that "the machine would work" and that he, the seller, would be allowed to make any alteration necessary to make it work. Defendant used the harvester for two days but it did not work satisfactorily. Seller then told defendant that he could take it to another job at Continental, Arizona, and "see how it worked there". Defendant then signed the conditional sales contract and moved the machine to Continental, Arizona. There it continued to perform unsatisfactorily. As a result an agent of the seller and two field men from the area distributor went to Continental for the express purpose of trying to make the harvester work properly. When they were unable to do so, the manufacturer was contacted who sent a factory representative to Arizona some time

in the early part of October. Apparently substantial changes, the nature of which were not described, were made on the head of the machine without successfully improving its operation. Finally defendant was told that due to what they, the factory representative and representatives of the distributor and seller, had seen, the machine would be sent back to the factory for the purpose of designing a new head.

About the first part of November the harvester was picked up from defendant, put on a railroad car and shipped back to the factory. Subsequently word was received by the seller that the manufacturer had decided there were two areas in the United States that their machine would not work and "that they did not figure that it was feasible to completely re-tool for the business they would do in these two areas" as it would cost at least a quarter of a million dollars. At that time defendant was told that seller would be reimbursed by the manufacturer and that seller would in turn reimburse defendant. For some undisclosed reason this was not done.

It is apparent from the recited facts that defendant knew the machine was not working properly at the time of entering into the conditional sales contract. The failure of the harvester to perform in the manner expected prior to its actual purchase by the defendant could constitute a waiver of the implied warranty of fitness. But here the facts are clear that both parties knew the machine might not perform satisfactorily and the seller, with the consent of the manufacturer, thereupon expressly warranted that the machine would be made to work. It was within the contemplation of the parties, clearly borne out by their subsequent conduct, that the manufacturer and seller have a reasonable opportunity to perform. It was not until the manufacturer decided against making a different head that the parties considered the machine as unfit for the purposes for which it was sold. The record does not disclose any facts from which it could be concluded that the warranty of fitness was waived. Essentially an express warranty was substituted for that implied in law.

█ The bank next urges that a buyer under a conditional sales contract who enters into an agreement with the seller by which a machine is to be taken to the factory for repairs or rebuilding thereby waives the statutory remedies for breach of warranty. The evidence does not support in the slightest the conclusion that such a waiver of warranty took place under the circumstances in this case. Defendant testified:

"Q. All right. What happened after that? A. · In the meantime he told me that Western Land Rolling Company (the manufacturer) was going to take the machine back to the factory.

"Q. By 'he,' you mean Mr. Osborne? (Seller) A. Mr. Osborne, yes, was going to take it back to the factory and rebuild it so that it would work.

"Q. What did you have to say, if anything, about that? A. Well, I told him that would be fine because, because I didn't have any use for it the way it was."

This testimony supports the conclusion that the manufacturer was still attempting to perform the warranty. It does not support the conclusion that defendant entered into an agreement waiving the warranty and accepted a new promise to repair or rebuild the machine in lieu thereof.

■ Moreover defendant is not alone confined to the remedies set forth in A.R.S. § 44–269. By A.R.S. § 44–211, subd. B:

"Where the property in the goods has not passed, the buyer may treat the fulfillment by the seller of his obligations to furnish goods * * * as warranted * * * as a condition of the obligation of the buyer to perform his promise to accept and *pay for the goods*." (Emphasis supplied.)

Where a breach of warranty exists, a buyer may refuse to pay for the goods where the conditional sales contract is in the hands of an assignee for value. Foodmaster, Inc. v. Moyer, 101 N.H. 298, 141 A.2d 890; Pullen v. Johnson, 67 S.D. 173, 290 N.W. 488, 130 A.L.R. 747.

■ Finally the bank urges that the defendant is estopped to raise the defense of breach of warranty for the reason that he failed to notify the bank of the unfitness of the harvester; that as a result the bank did not take steps to otherwise protect its interest. However, we do not think that defendant is estopped. The Uniform Sales Act, our section A.R.S. § 44–249, measures the extent of the duty of a buyer, providing that if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of warranty, the seller shall not be liable. Nowhere either expressly or by implication is there cast on the buyer the duty to notify the assignee of a conditional sales contract. Since the bank, as assignee, could not acquire any greater rights against the buyer than those possessed by the seller, National Bond & Investment Co. v. Union Inv. Co., 260 Mich. 307, 244 N.W. 483; Cooke v. Real Estate Trust Co., 180 Md. 133, 22 A.2d 554, notice to the seller alone was the extent of defendant's duty. To make the silence of a party operate as an estoppel, there must have been a duty to speak. Bank of America of California v. Pacific Ready-Cut Homes, 122 Cal.App. 554, 10 P.2d 478; Marsh v. S. M. S. Co., 289 Mass. 302, 194 N.E. 97, and Lowenberg v. Booth, 330 Ill. 548, 162 N.E. 191.

. The judgment of the lower court is reversed and it is ordered that judgment in favor of plaintiff be set aside and judgment be entered in favor of defendant on his motion for summary judgment.

PHELPS, BERNSTEIN, UDALL and LESHER, JJ., concur.