371 P.2d 795

HEWITT–ROBINS, INC., ROBINS CONVEYORS DIVISION, and Union Industrial Corporation, Inc., a corporation, Plaintiffs-Appellees,

v.

LEA COUNTY SAND AND GRAVEL, INC., a corporation, Defendant-Appellant.

No. 6869.

Supreme Court of New Mexico.

May 21, 1962.

W. D. Girand, Lowell Stout, Hobbs, for appellant.

Stagner, Sage, Walker Estill, Carlsbad, for Union Industrial Corp.

L. George Schubert, Hobbs, for Hewitt-Robins, Inc.

CARMODY, Justice.

Lea County Sand and Gravel, Inc. appeals from the granting of summary judgments in two cases, which were consolidated for trial and for appeal.

The sole question is whether there existed controverted issues of material fact in either or both of the cases. We will attempt to untangle the legal and factual issues which arose because of the somewhat complicated facts and the filing of two independent cases. Both cases are based upon the same circumstances and so interrelated that it is only proper that they were and are consolidated.

The original case was by Hewitt-Robins, Inc., Robins Conveyors Division, hereafter called "Hewitt-Robins," against Lea County Sand and Gravel, Inc., which will be termed the "Gravel Company," for the purchase price of a sand and gravel grading screen, valued at slightly less than $6,000.00. The Gravel Company, in its answer, admitted its liability, but denied any indebtedness, and counterclaimed for damages on the general basis of breach of warranty relating to another grading screen, which, it was claimed, was purchased from Hewitt-Robins some months earlier. Hewitt-Robins answered the counterclaim, alleging, in addition to general denials, that there was no privity of contract between the parties as to the first screen. The Gravel Company thereupon sued Union Industrial Corporation, Inc., which we will refer to as "Union," for the same damage set forth in the above-mentioned counterclaim, alleging sale of the screen by Union to the Gravel Company and breach of warranty for failure of the screen to properly perform as agreed. Union, in its answer, claimed that the sale was made not by it but by Hewitt-Robins,

and that the warranties were made by the representatives of Hewitt-Robins, not by Union. Union also brought Hewitt-Robins into the case as a third-party defendant, seeking reimbursement in the event of recovery by the Gravel Company. Hewitt-Robins answered this third-party complaint, on the basis that it had sold the screen to Union, which had in turn sold it to the Gravel Company, and that Hewitt-Robins had made no warranties to the Gravel Company. After the depositions of the presidents of the Gravel Company and Union were taken, Hewitt-Robins moved for summary judgment in the first case, for a dismissal of the third-party complaint in the second case, and Union asked for summary judgment in the second case.

The following appears from the depositions: For some years, the president of Union had been calling upon the president of the Gravel Company, making sales of various items of equipment needed by the Gravel Company. During one of these visits, the president of the Gravel Company said that he had seen a new type of sand and gravel screen advertised, and that he might be interested in it. Union's representative stated that he did not know much about it, but would have a sales representative of Hewitt-Robins call upon the Gravel Company. Various conversations were held with the sales representative of Hewitt-Robins, and, finally, a telephone call was made and the president of the Gravel Company talked with an employee of the Hewitt-Robins plant in Passaic, New Jersey. During this conversation, the president of the Gravel Company advised the factory employee of Hewitt-Robins what his needs were, and the difficulties that he expected because of the composition of the aggregate from which the sand and gravel is produced. The Gravel Company urges that it was as a result of this conversation and the assurances made by the factory representative that the order for the screen was made. The difficulty, however, arises by reason of the fact that there was no written contract between Hewitt-Robins and the Gravel Company, and that the screen was shipped as a result of a purchase order from Union to Hewitt-Robins, directing that the screen be shipped direct to the Gravel Company. Hewitt-Robins contends that the purchase order signifies a sale between it and Union, whereas Union, contrariwise, insists that the purchase order was only a confirmation of the order made by the Gravel Company from Hewitt-Robins during the telephone conversation. The purchase order states:

"This order confirms telephone conversation on 6/30/55 between your Mr. F. L. Brucker and Mr. H. Lautenschlager."

This was a reference to the conversation when the president of the Gravel Company talked with the factory, the two persons named being employees of Hewitt-Robins.

Although the Gravel Company admits that the cost of the screen was to be charged through Union, nevertheless it claims that this was done because credit was already established with Union and not with Hewitt-Robins. The testimony of the president of Union substantiates this contention, and it also should be noted that Union was to receive a commission from Hewitt-Robins on the price of the sale, as set by Hewitt-Robins.

It is to be noted that Union had a distributor's agreement with Hewitt-Robins, which included the following provisions:

"Sec. 10. Engineering business is that material handling machinery business consisting of inquiries, orders or contracts for elevating, conveying, screening or processing machinery consolidated by engineering service into an integrated layout of materials handling machinery to fit the specified needs of the purchaser. Such business is not within the scope of this agreement."

Union claims that the above section of the agreement precluded it from selling the screen to the Gravel Company. The Gravel Company's position is that it could not be bound by the provisions of an agreement between two other parties, and that therefore the section has no application insofar as the Gravel Company's rights are concerned. Hewitt-Robins, on the contrary, seems to maintain that the section does not apply to a purchase such as that involved.

In any event, the screen was subsequently shipped to the Gravel Company by Hewitt-Robins, and Hewitt-Robins furnished an engineer-inventor, who stayed at the gravel plant for several weeks, attempting to put the screen in operable order. Actually, the screen was shipped in crates, with instructions to the Gravel Company that the machine should not be touched and that the assembly would be performed by the engineer sent from the plant. The screen never worked properly, and, from what we gather, a great many of the parts became junk and the remainder were returned to Hewitt-Robins. Neither Hewitt-Robins nor Union ever attempted to recover the purchase price of this screen, it being valued at some $8,600.00, but, as stated, the litigation was all initiated by the filing of suit over the second screen.

The trial court granted Hewitt-Robins' motion for summary judgment, apparently on the theory of lack of privity of contract between Hewitt-Robins and the Gravel Company. The summary judgment in favor of Union seems to have been based on the lack of definite proof by the Gravel Company that express warranties had been made by Union. The dismissal of the third-party complaint naturally followed the trial court's ruling on the summary judgment.

■ Summary judgment under the provisions of rule 56(c) (§ 21–1–1(56) (c), N.M.S.A., 1953 Comp.) is only proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. It is not a substitute for a trial. Zengerle v. Commonwealth Insurance Co. of N. Y., 1956, 60 N.M. 379, 291 P.2d 1099; Michelson v. House, 1950, 54 N.M. 197, 218 P.2d 861; and Ballard v. Markey, 1959, 66 N.M. 265, 346 P.2d 1045. The party against whom a motion for summary judgment is directed is entitled to have all reasonable inferences construed in his favor. Agnew v. Libby, 1949, 53 N.M. 56, 201 P.2d 775. Actually, even in a case where the basic facts are undisputed, it is frequently possible that equally logical, but conflicting, inferences may be drawn from these facts which would preclude the granting of summary judgment. Sarkes Tarzian, Inc. v. United States, (7th Cir. 1957), 240 F.2d 467; United States v. Dollar, (9th Cir. 1952), 196 F.2d 551; and Braniff v. Jackson Ave.-Gretna Ferry, Inc., (5th Cir. 1960), 280 F.2d 523.

■ Upon an examination of the record, it would appear that there are genuine issues of fact which were determined adversely to the Gravel Company, without giving it the benefit of all reasonable inferences flowing from the pleadings, the affidavit and the depositions. We are fully cognizant that many of the problems are somewhat of mixed fact and law, but certainly the evidence, or the inferences therefrom, of the Gravel Company's reliance on the representations, whether made by Hewitt-Robins, or by Union, or by both, is a controverted question of fact. So, also, is the matter of whether Hewitt-Robins or Union was the actual seller from whom the Gravel Company made the purchase.

It is difficult, if not impossible, to properly apply the various rules with respect to express or implied warranties in a case such as this, without a complete trial. This is not such a simple case as one between the ordinary manufacturer and an ultimate consumer who has purchased goods from a middleman. The fact (if it is a fact) that the screen was sold to fulfill a particular purpose may alter the responsibilities of the parties. See, Phares v. Sandia Lumber Company, 1957, 62 N.M. 90, 305 P.2d 367; and compare, J. B. Colt Co. v. Gavin, 1928, 33 N.M. 169, 262 P. 529. It is of interest to note, however, that in this general field there are cases involving special fact situations which have given rise to a determination of responsibility on the part of the manufacturer, some of which we hereafter cite without in any wise implying approval or disapproval of the rules therein announced. Thus, the manner of delivery and installation was found to have had considerable importance in Westcott-Alexander, Incor-

porated v. Dailey, (4th Cir. 1959), 264 F. 2d 853; the circumstances of the sale were considered of great importance in Spartanburg Hotel Corp. v. Alexander Smith, Inc., 1957, 231 S.C. 1, 97 S.E.2d 199. See, also, Ray v. First National Bank of Arizona, 1960, 88 Ariz. 337, 356 P.2d 691. In addition, it was determined in Dobbin v. Pacific Coast Coal Co., 1946, 25 Wash.2d 190, 170 P.2d 642, that representations, if relied upon, may give rise to a cause of action in tort, even though there might be no privity of contract. See, also, Burr v. Sherwin-Williams Co., 1954, 42 Cal.2d 682, 268 P.2d 1041.

The above factual considerations are only a few of those which must be determined before the court can properly decide the merits of the litigation. We do not intend to intimate that the Gravel Company has the right to recover under these facts, even if its damage can be proven, but merely hold that there are controverted issues of material fact which necessitate the denial of the motions for summary judgment.

It follows that the cause must be reversed and remanded to the trial court with directions to set aside the summary judgments and the order of dismissal, and proceed in a manner not inconsistent herewith. It Is So Ordered.

MOISE and NOBLE, JJ., concur.

COMPTON, C. J., and CHAVEZ, J., not participating.