[No. 18196.   Department Two.   February 15, 1924.]

A. F. SAVAGE *et al., Appellants,* v. MARKEY MACHINERY
COMPANY, *Respondent.*[1]

SALES (101)—WARRANTY—MAKING AND REQUISITES.  Where a second hand donkey engine was sold without express warranty after inspection, on representations that it was in good condition, which was true, a bill of sale made a week later reciting that it was in first class condition was without consideration.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 2, 1923, upon findings in favor of the defendant, in an action on contract, tried to the court.   Affirmed.

*J. L. Corrigan,* for appellants.
*Bronson, Robinson & Jones,* for respondent.

MAIN, C. J.—The purpose of this action was to recover for the breach of an alleged express warranty in the sale of a second-hand donkey engine and boiler. The trial resulted in a judgment dismissing the action, from which the plaintiffs appeal.

The respondent, the Markey Machinery Company, is engaged in the machinery business in Seattle.   The appellant Yakima Paving Company is engaged in road building in the eastern part of the state and, prior to the date of the purchase of the rig in question, had a contract with the state for the construction of a part of what is known as the Inland Empire Highway, between Waitsburg and Walla Walla.   It had installed equipment in a gravel pit near Huntsville for the purpose of getting out sand and gravel, and when this equipment was sought to be operated it was found that the engine and boiler would not perform the work and it would be necessary to procure a new engine and

[1]Reported in 223 Pac. 2.

boiler to properly equip the plant. The appellant thereupon caused one Stanley T. Scott, a machinery salesman in Seattle, to find out if it was possible to secure a suitable second-hand rig. Scott interviewed, among others, the respondent and looked over an engine and boiler which that company had for sale. A few days later he again appeared with one E. Neary, the foreman of the gravel pit, and they again inspected the rig. Subsequent to this, Scott caused the Hartford Steam Boiler Inspection & Insurance Company, a recognized authority for such purposes, to make an inspection of the engine and boiler. After this inspection was made, the report thereof suggested certain improvements and repairs, and these were made by the respondent. The engine and boiler were sold to the paving company for the sum of $1,850, and on May 15, 1922, were shipped from Seattle, and were fully paid for on May 16th, the following day. About a week later, and on May 22, 1922, Scott again appeared at the respondent's place of business and requested C. H. Markey, the president and manager of that company, to sign a bill of sale, which was done. When the engine and boiler arrived at their destination and were placed in the gravel pit they failed for some reason to perform the work which the paving company thought they should perform, and that company, claiming that the machinery had been purchased under an express warranty that it was suitable for the purpose for which it was intended and was in first-class condition, in time brought this action for damages, as above indicated.

There is little in this case but questions of fact. The primary question is whether the rig was sold with an express warranty on the part of the machinery company that it was in first-class condition. The evidence upon this question is conflicting, Scott testifying that it was the understanding at all times between him and

Markey that there was such express warranty, and Markey testifying that there was no such express warranty. The trial court found:

"That there was no concealment on the part of the defendant, nor did the defendant represent that the rig would be suitable for defendant's (plaintiff's) work; that both parties knew and understood that the machinery was second-hand, and defendant's representations did not go beyond stating that it had replaced worn parts and put the engine and boiler in good condition."

Under the evidence, it seems that the trial court was clearly right in finding that the rig was in good condition, that there was no express warranty, and that the purchase was made in reliance upon the inspections made, or caused to be made, by the paving company. In the bill of sale, which was made approximately a week after the entire transaction was closed and the rig paid for, there is a recital that "it is in first class condition." To support this bill of sale no new consideration passed. As to the reason for its being given, the testimony is in dispute. It was taken in the name of Mrs. A. F. Savage, who apparently had advanced money to the paving company. The fact that it is recited in the bill of sale that the rig was in first-class condition does not furnish a basis of liability. Scott testifies that it was given in pursuance of the understanding at the time the rig was purchased, but this Markey denies, and the trial court found that it was not intended to be a contract between the respondent and the paving company, but that such instrument was given for the purpose of furnishing security to Mrs. Savage. We think the evidence shows that the engine and boiler were in good condition at the time and were reasonably worth the price paid therefor, as found by the trial court. It was also found by the trial court

that the reason that the rig failed to perform the work which was required of it was on account of the manner in which it was operated when it was first placed in the pit; but it seems unnecessary to pursue this question, as the record makes it clear that there was no express warranty, but that the purchase was made upon the inspection by representatives of the paving company.

The judgment will be affirmed.

FULLERTON, MITCHELL, PEMBERTON, and BRIDGES, JJ., concur.