[No. 31159.  Department One.  March 15, 1950.]

ARTHUR L. FLEENOR *et al., Appellants,* v. E. G. ERICKSON *et al., Respondents.*[1]

[1]Reported in 215 P. (2d) 885.

*John M. Warnock* and *James Tynan*, for appellants.

*Casey & Koch*, for respondents E. G. Erickson *et al.*

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Altha P. Curry*, for respondents Paul L. Proctor *et al.*

DONWORTH, J.—Plaintiffs, Arthur L. Fleenor and his wife, instituted this action to recover for the damage they suffered when the refrigeration locker plant which they installed in the basement of their store building froze the ground underneath the floor causing the building to buckle and necessitating the closing of the plant.

Original defendants to the action were Wood Conversion Company, a foreign corporation; Paul L. Proctor, sales representative for that company, and his wife; E. G. Erickson and Nels G. Lindh, copartners under the firm name of Edmonds Lumber Company, and their respective wives.

The latter partnership and the partners' wives interposed a demurrer and motion to strike, directed to plaintiffs' second amended complaint, which were granted. The plaintiffs refusing to amend further, the court at the beginning of the trial, entered an order of dismissal without prejudice as to these parties. Wood Conversion Company

appeared specially and moved to quash the service on the ground that it was not a corporation doing business in this state. This motion was denied. A trial before the court and a jury resulted in a verdict and judgment in favor of the defendants Proctor and Wood Conversion Company. Plaintiffs' motion for a new trial having been denied, judgment was entered dismissing the action. This appeal has been taken from the order dismissing the partnership from the case and from the judgment entered upon the verdict dismissing the case as to the remaining defendants.

In 1946 appellants purchased property on the Mukilteo-Everett highway in Snohomish county with the intention of constructing thereon a building thirty-five by fifty feet consisting of a locker plant in the basement, a grocery store on the first floor and an apartment upstairs. Appellants had had no experience in constructing a refrigeration plant, engaged no architect, and the only plans used were those consisting of very rough sketches of the apartment upstairs and the grocery store, prepared by Fleenor himself. The term "appellant" will be used to refer to appellant husband.

In January, 1946, the foundation was dug with a bulldozer and sloped toward the rear of the building for drainage purposes. The basement forms were put in by appellant with the help of his half-brother and stepfather. Concrete was poured into the forms by a sand and gravel company. Drain tile was laid in a trench around the outside walls and another trench through the middle of the basement. The joints were covered with tar paper and all the drain tile was covered with a heavy layer of gravel. Gravel several inches deep was then placed over the entire surface of the basement and a concrete floor was poured over the gravel. Carpenters were hired to complete the building.

Shortly after construction was commenced, appellant visited Edmonds Lumber Company to inquire about insulating material for the locker plant in the basement. The testimony of appellant and the two partners conflict with reference to what was said on that occasion. Appellant testified that he informed the partners that he wanted insulating material for a locker plant and that they recom-

mended Balsam Wool, a product of respondent Wood Conversion Company, and informed him that if he purchased this product, he would be furnished with a reliable refrigeration engineer to help lay out the locker plant. Appellant gave them the size of the locker plant and the partners determined what quantity would be needed.

Mr. Erickson and Mr. Lindh (the partners) both testified that appellant came into their store and ordered a specific amount of Balsam Wool and wanted to know how to install it. The partners deny that they either recommended the product or determined the quantity. Appellant was told that they knew nothing about the installation of this material but that they would inquire from the local jobber in Seattle and pass any suggestions along to appellant. Upon inquiring from this jobber Mr. Lindh was told that respondent Proctor would be available to advise appellant as to how to use the material.

Shortly after this conversation took place, appellant received a letter from Edmonds Lumber Company dated February 15, 1946, reading as follows:

"In regard to your millwork order as per our conversation the first of the week, we find that we can fill the order as specified for two hundred ninety two dollars and forty seven cents ($292.47) plus tax cash on delivery at our warehouse.

"We will supply double thick Balsam wool in the quantity you need for sixty three dollars ($63.00) per thousand sqr. feet, on the same terms.

"Enclosed you will find a folder giving cold storage construction details, using Balsam-wool and Nu-wood.

"In the event that it is our privilege to supply these materials, we will have a factory representative go to your job to give you help that only a man with his qualifications and experience can give."

Enclosed with the letter was a folder containing "Cold Storage Construction Details, insulated with Balsam Wool & Nu-wood."

Appellant testified that he paid no attention to the enclosed folder since he planned on depending upon the advice of the factory representative. Later he gave the Edmonds

Lumber Company an order for Balsam Wool and thereafter placed a second order, the total paid by him for this insulating material being $509.

After a quantity of this insulating material had been delivered to appellants' building, but before the basement floor was laid, respondent Proctor, at the instance of the Edmonds Lumber Company, visited the building and told appellant that he was from the Wood Conversion Company and at the same time handed appellant his card which identified Proctor as a "sales representative." Appellant testified that he didn't read the card but put it in his pocket. Appellant called his carpenters together and introduced the respondent as a "refrigeration engineer." Respondent doesn't deny being so introduced but does deny that he represented himself as being a "refrigeration engineer." During the first visit, which lasted about half an hour, the discussion concerned itself with how to properly fasten the insulating material to the floor.

About thirty days later respondent Proctor again visited the job and remained less than an hour. The work was considerably advanced by this time, the basement floor had been poured and part of one layer (2 inches) of Balsam Wool had been put on the floor. It was apparent that after putting one layer of insulation on the floor there would be a quantity remaining. Respondent Proctor was asked whether this additional insulation should be put on the floor or the ceiling and he suggested that it be put on the ceiling rather than on the floor since the grocery store floor above would be quite warm. Appellant accordingly placed one layer of Balsam Wool on the floor and two layers on the ceiling.

The locker plant was put in operation on September 14, 1946, and the grocery store was opened the following December. Soon after the store was opened, appellant noticed that something was wrong with the structure because the doors in the living quarters upstairs began to stick. Upon examination of the building, it was discovered that the locker plant floor was heaving upward in the center and that this was due to the fact that the ground underneath

the floor was frozen. The swelling continued to such an extent that the top row of lockers had to be removed to keep them from being forced through the floor of the grocery store above. Finally appellant determined that it wasn't safe to operate the plant while in this condition and so the locker plant was shut down in May, 1947. The ground then began to thaw, and while the building came down somewhat, it did not return to its normal position.

According to appellant's expert witnesses the freezing of the ground was due to insufficient insulation. According to respondents' expert witness the freezing was due to insufficient ventilation under the concrete floor, since the ground upon which the locker plant was constructed was wet. His testimony was that if two layers of Balsam Wool had been put on the floor (instead of one) the freezing would have occurred later than it did but the damage would have been the same. This pivotal conflict in the testimony was resolved by the jury in favor of respondents Proctor and Wood Conversion Company. Appellants do not contend that there was any inherent defect in the insulating material or that Balsam Wool was not proper insulation material for a refrigeration plant.

Appellants first assign as error the trial court's order striking the second amended complaint as to the Edmonds Lumber Company and its later order dismissing the action as to the partners (respondents Erickson and Lindh).

Edmonds Lumber Company appeared with a demurrer and certain motions directed to the amended complaint and, on December 1, 1948, the trial court, after having heard arguments thereon, filed a memorandum decision granting the motions in part and reserving its ruling on the demurrer. A second amended complaint was filed December 10, 1948, and a few days later another demurrer was interposed by the lumber company together with similar motions directed to that complaint.

On December 24, 1948, after further hearing, the court entered an order striking the second amended complaint from the files as to the Edmonds Lumber Company for the reason that the second amended complaint contained evi-

dentiary and immaterial matter and was redundant and repetitious and did not conform to the rules and statutes relating to pleading. This order granted appellants leave to file a third amended complaint.

Appellants failed to file a third amended complaint and did nothing more as to the Edmonds Lumber Company until the case was called for trial in May, 1949. At that time counsel for the partnership moved to dismiss the cause. The court entered an order of dismissal without prejudice as to them. The case then proceeded to trial against the remaining defendants (respondents Proctor and Wood Conversion Company).

■ Under the provisions of Rem. Rev. Stat., § 286 [P.P.C. § 86-5], the trial court had discretion to strike the second amended complaint, since it was of the opinion that appellants had not complied with its previous order, and we do not find that there was any abuse of discretion in its so doing. Since appellants, in effect, elected to stand on their second amended complaint and refused to plead further as to the respondents Erickson and Lindh constituting the Edmonds Lumber Company, it was proper for the court to dismiss the action as to them. Appellants invited the entry of the order of dismissal and no error can be predicated upon its entry. *Barber v. Grand Summmitt Mining Co.,* 11 Wn. (2d) 114, 118 P. (2d) 773. The order of dismissal entered May 19, 1949, will stand affirmed.

Appellants next assign as error the failure of the trial court to give certain instructions proposed by them as to express warranty, and in the alternative, as to implied warranty.

Appellants contend that when respondent Proctor told the appellant and his carpenters that one layer of Balsam Wool on the floor would be enough, he warranted that the product so used would make for a successful locker plant. The sale, therefore, was made under such circumstances that respondent Wood Conversion Company, through its agent Proctor, became a party to the sale to the extent that it either expressly or impliedly warranted that if its product was used in the manner specified by it, the desired

object would be accomplished without damage to the building.

The general rule is that if there is no contractual privity there can be no warranty, either express or implied. In *Mazetti v. Armour & Co.*, 75 Wash. 622, 135 Pac. 633, Ann. Cas. 1915C, 140, 48 L. R. A. (N.S.) 213, the court noted the general rule above and pointed out certain exceptions to the rule as follows:

"(1) Where the thing causing the injury is of a noxious or dangerous kind; (2) where the defendant has been guilty of fraud or deceit in passing off the article; (3) where the defendant has been negligent in some respect with reference to the sale or construction of a thing not imminently dangerous."

It is apparent that the instant case does not fit within any of the above exceptions and that therefore it must be governed by the general rule. Respondents were certainly not directly parties to the sale of Balsam Wool to the appellants by the Edmonds Lumber Company. The representations of Proctor, being made after this sale was completed, were not actionable in the absence of a new consideration. *Savage v. Markey Machinery Co.*, 128 Wash. 433, 223 Pac. 2. The use of the Balsam Wool in the circumstances found here does not constitute a new consideration. Thus no liability could be imposed upon respondents in the absence of any negligence in making the statements.

Appellants cite and place great reliance upon *Baxter v. Ford Motor Co.*, 168 Wash. 456, 12 P. (2d) 409, 15 P. (2d) 1118, 88 A. L. R. 521 (the second appeal being reported in 179 Wash. 123, 35 P. (2d) 1090), as being in support of their position. The decisions in that case have been much discussed in law reviews and in subsequent decisions of this and other courts of last resort. In the *Baxter* case, a manufacturer was held liable, without regard to privity, to one who had purchased an automobile from a dealer because of breach of representations made by the manufacturer in printed matter furnished by the manufacturer to its dealer, to the effect that the windshield of the automobile was made of shatter-proof glass. In purchasing the car, the buyer

relied on the representations made in these catalogues. It is strenuously argued that, in view of the *Baxter* case, *supra,* want of privity is no longer an obstacle in this state to recovery by the ultimate consumer since liability can be imposed upon a manufacturer because of a purchaser's reliance upon his representations in a catalogue. Consequently, appellant contends that he should recover damages from respondent Wood Conversion Company because of the representations made by respondent Proctor, a representative of the manufacturer who had authority to make them.

The *Baxter* case, *supra,* is distinguishable from the present case though it does represent an extension of the warranty theory. The purchaser in that case was there induced to buy the product (a Ford car) through certain statements and representations contained in catalogues furnished by the manufacturer to its dealer for distribution to prospective customers. The court stated:

"It would be unjust to recognize a rule that would permit manufacturers of goods to create a demand for their products by representing that they possess qualities which they, in fact, do not possess; and then, because there is no privity of contract existing between the consumer and the manufacturer, deny the consumer the right to recover if damages result from the absence of those qualities, when such absence is not readily noticeable."

In the instant case the manufacturer did not induce the sale of a defective product through representations. Indeed, there is no claim that the Balsam Wool was defective in any respect or that this product was represented as possessing qualities which it did not possess. The representations upon which appellant claimed he relied were made through its sales representative *after* the sale of the Balsam Wool by the Edmonds Lumber Company and were concerned with the proper application of the product. We do not feel that the rule expressed in the *Baxter* case should be extended to hold that there was a breach of warranty, either express or implied, under the circumstances disclosed in this case.

We have examined the other authorities referred to in appellants' briefs relating to warranty and do not find that they sustain appellants' claim of error with respect to the court's refusal to give the instructions proposed by them.

The trial court instructed the jury that in order to recover, the appellants must show by a fair preponderance of the evidence that: (1) Appellant purchased Balsam Wool and, in connection with the sale or promotion of sales by the Wood Conversion Company, respondent Proctor, as its agent, made representations as to his skill in the use of Balsam Wool and as to its proper application to appellants' building; (2) Proctor was under a duty to give correct information if he spoke and that Proctor knew that appellant intended to rely on the statements; (3) appellant relied upon the statements of respondent Proctor relative to his skill and proper way to apply the material; (4) appellant was warranted as a reasonably prudent person in relying on Proctor's representations; (5) appellant followed Proctor's advice; (6) respondent Proctor's statements were untrue and that Proctor, in the exercise of reasonable care, should have known that they were untrue or erroneous, or that Proctor did not act as a reasonably prudent man in making the statements; and (7) as a direct and proximate result of the foregoing, appellants were damaged.

The basis of appellants' next assignment of error is that (assuming that the law of warranty is inapplicable) the instructions given by the court compelled appellants to prove fraud in order to recover instead of merely having to prove negligent misrepresentations. This assignment is without merit because the instructions given did cover negligent misrepresentations and were proper instructions in view of the evidence before the court and jury.

Appellants further contend that the trial court erred in refusing to give an instruction requested by them as to the liability of the agent, apart from the corporation he represents. While the trial court did not devote a separate instruction to the liability of respondent Proctor as distinguished from that of respondent Wood Conversion Company (his principal), this matter was in substance covered

by other instructions. The court instructed that, if the representations of respondent Proctor were not found to be within the ordinary scope of his business as a sales agent, such statements would not be binding upon Wood Conversion Company. Also, a form of verdict was submitted to the jury by which they could have found for appellants against respondents, Proctor and wife, and in favor of respondent, Wood Conversion Company. There was no error in refusing to give the instruction in the form requested.

Appellants claim that the trial court's instruction to the jury regarding the measure of damages incorrectly stated the rule applicable to the facts of this case. Since the jury found no liability on the part of respondents, or either of them, the instruction, if erroneous, on which question we express no opinion, was error without prejudice. *Hansen v. Coldwell,* 192 Wash. 167, 73 P. (2d) 351; *Johnston v. Owens,* 21 Wn. (2d) 892, 153 P. (2d) 879.

Error is assigned because of the denial of appellants' motion for a new trial. Besides the contention that the court erred in refusing their proposed instructions on warranty (already discussed above), appellants in support of their motion relied upon two affidavits of appellant to establish misconduct of three members of the jury. One affidavit is to the effect that appellant noticed one of the jurors napping in the course of the trial. The juror in his affidavit denied that he was asleep. Appellants did not voice any objection to the conduct of the jury during the course of the trial. We hold that therefore appellants waived their right to claim a new trial for the misconduct of this juror. *Sun Life Assurance Co. v. Cushman,* 22 Wn. (2d) 930, 158 P. (2d) 101.

Appellant's other affidavit recited that two of the jurors had private information regarding locker plants (of which they said nothing on their *voir dire* examination) and that after the verdict they stated publicly that they knew of their own knowledge that appellants' locker plant would have been a failure because there had been a failure of a similar plant in Monroe. One of the jurors referred to denied by affidavit that he knew anything about the Monroe

plant failing until after the rendition of the verdict.

The trial court in overruling the motion stated that the affidavit of appellant was so much in the nature of hearsay that its weight was nil. It is axiomatic that the granting or denying of a motion for a new trial on the ground of alleged misconduct of the jury is a matter within the discretion of the trial court. Unless it clearly appears upon appeal that the court abused its discretion, the ruling of the trial court on such motion will not be disturbed. *Kellerher v. Porter,* 29 Wn. (2d) 650, 189 P. (2d) 223. Clearly we cannot say that there was an abuse of discretion by the trial court in this case.

We have considered the other assignments of error discussed in appellants' briefs and find them to be without merit.

The jury having found the facts in favor of respondents Proctor and Wood Conversion Company after being fairly charged by the court as to the law applicable to the issues presented, the judgment entered in their favor upon the verdict is hereby affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.

---

May 2, 1950. Petition for rehearing denied.