[No. 45316. En Banc. March 22, 1979.]

JAMES M. DAUGHTRY, *Respondent,* v. JET AERATION COMPANY, *Petitioner.*

*Stephen E. Mansfield,* for petitioner.

*Zylstra & Pitt* and *Ted D. Zylstra,* for respondent.

UTTER, C.J.—Respondent James A. Daughtry filed suit in Island County Superior Court claiming breach of warranty in the alleged failure of a home sewage system manufactured by petitioner Jet Aeration Company. The trial court awarded judgment to Daughtry, and the Court of Appeals affirmed. We granted review to determine (1) whether the trial court properly considered and found the statute of limitations to be no bar to the action, and (2) whether the trial court properly rejected Jet Aeration's argument that lack of privity between the parties required dismissal of the case. We find that in the context of the facts of this case the trial court's findings and conclusions do not resolve these issues, and remand the case for further findings and conclusions consistent with the standards hereafter discussed.

In July 1968, Daughtry enlisted the assistance of Arne Seltveit in procuring and installing an aeration–type home sewage treatment system for the home Daughtry was

building in Island County. Such a system is like a conventional septic tank, but employs a motor–driven agitator to effect through aerobic digestion more complete breakdown of the wastes to be treated.

Seltveit chose such a system manufactured by Jet Aeration Company, and purchased the system from Ted Tidrington, Jet Aeration's local distributor. This was done either on his own judgment or on Daughtry's request. Tidrington's "Job Invoice" covering the transaction shows a discounted sale of the system to Seltveit for "resale."

Seltveit then installed the system on Daughtry's property, charging both for his services as an installer and his costs plus a markup on the Jet system. Tidrington, as part of a limited service program provided with the system, visited Daughtry semi–annually to insure proper functioning of the system. He continued to do so occasionally at no cost even after the 2–year service program had expired.

In 1971, Daughtry began to experience difficulties with the treatment of home effluents, as a solid material appeared to clog the discharge pipes in his septic drain field. Water backed up into the processing chambers of the Jet system and had to be pumped out on numerous occasions. Over the ensuing 2 years a number of persons offered advice, among them Seltveit, Tidrington, and Bob Masters, Tidrington's successor as distributor of the Jet Aeration system. Some modifications of the drain field were undertaken. At one point Tidrington substituted a new processing tank, and eventually Jet Aeration substituted a new agitation unit to try to alleviate Daughtry's difficulties. These efforts were to no avail.

In 1973, Daughtry filed suit, naming as defendants Tidrington and Jet Aeration (but not Seltveit). Trial was held in March 1975. The principal issue at trial was whether the cause of Daughtry's troubles was in inadequate drainage or a defect in the Jet Aeration system. In a finding not before us for review, the trial court resolved this issue for the plaintiff. As indicated above we consider only two

additional issues, respectively involving the statute of limitations and the question of privity between the parties.

Jet Aeration raised the statute of limitations as an affirmative defense. As the above discussion indicates, Daughtry purchased the sewage treatment system in 1968. He first became aware of apparent malfunctioning in 1971. He subsequently filed suit in 1973. Jet Aeration contended both in its pleadings and by motion to the court that a 4–year statute of limitations had run in 1972. The trial court denied Jet Aeration's oral motions to dismiss for running of the statutory period, but made no finding or conclusion as to that issue in its findings and conclusions. Daughtry urges, and the Court of Appeals concluded, that no finding was necessary. We disagree.

█ It is the general rule in this state that findings of fact need not be made concerning every contention made by parties to a case. *State v. Bastinelli,* 81 Wn.2d 947, 949, 506 P.2d 854 (1973). *See also Miller v. Geranios,* 54 Wn.2d 917, 919, 338 P.2d 763 (1959); *Hering v. Department of Motor Vehicles,* 13 Wn. App. 190, 192, 534 P.2d 143 (1975). However, statement of this principle does not dispose of the issue here. For it has also been held that a finding must be made as to all of the "material issues." *Bowman v. Webster,* 42 Wn.2d 129, 134, 253 P.2d 934 (1953); *Wold v. Wold,* 7 Wn. App. 872, 875, 503 P.2d 118 (1972), and cases cited therein.

These principles are not inconsistent. They do not require negative findings of fact or findings on nonmaterial issues, but do require the trial court in its findings to inform the appellate court, on material issues, "'what questions were decided by the trial court, and the manner in which they were decided . . .'" *Bowman v. Webster, supra* at 134, quoting *Kinnear v. Graham,* 133 Wash. 132, 133, 233 P. 304 (1925); *see also Ford v. Bellingham–Whatcom County Dist. Bd. of Health,* 16 Wn. App. 709, 558 P.2d 821 (1977). The trial court's findings here do not so inform this court.

The statute of limitations applicable to the instant case is provided at RCW 62A.2–725.[1] In pertinent part this provision declares that:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

■ Since the sewage treatment system in question was purchased July 16, 1968, more than 4 years prior to filing of the action on April 4, 1973, the cause of action could only survive if it accrued subsequent to delivery of the system, from breach of explicit warranty in conformity with the exception indicated in subsection (2). The subsection permits suit within 4 years of reasonable discovery of a breach, the breach occurring during performance explicitly warranted.

The trial court did find express and implied warranties of proper functioning were made and subsequently breached by Jet Aeration. There is no precise analysis or finding by the trial court, however, as to the period of express warranty, whether the breach occurred during that period, and whether the breach was reasonably discovered sufficiently along in the period so as to permit filing of the suit when Daughtry did so (April 4, 1973). Certain brochures introduced as evidence at trial by Daughtry do demonstrate a 1–

---

[1]For the purposes of this discussion we assume Jet Aeration's liability to arise from breach of a written contract. However we note that if the action were in tort, or liability to arise from breach of an implied contract warranty, the applicable period of limitations would be 3 years, as provided in RCW 4.16.080(2) and (3). Analysis of the facts of the case under this provision would then need to be undertaken.

or 2–year guaranty of freedom from defects by Jet Aeration. Testimony by Tidrington, however, supports a contention of no difficulty during the first 2 years of the system's operation.

Where, as here, the running of the statute of limitations is determinative, and whether it has been tolled depends upon the specific nature of express warranties, and time of accrual of the action, we hold the trial court must enter findings on these issues.

The second issue before us for review concerns Jet Aeration's claim that it shared no privity of contract with Daughtry. Jet Aeration contended at trial that the sale had been to Seltveit, not a party to the action, who in turn sold the sewage system to Daughtry. On this basis Jet Aeration moved the trial court to dismiss the case against it. The trial court denied the motion to dismiss the case against Jet Aeration, though it had granted a similar motion to dismiss against Tidrington, the Jet Aeration distributor. The trial court's findings indicate its view that Daughtry "purchased from the defendant Jet Aeration Company" the sewage treatment system.

Before we consider the merits of Jet Aeration's challenge to the trial court's finding, we must determine the adequacy of the petitioner's appellate brief in this regard. In its brief, Jet Aeration makes the following assignment of error concerning the privity issue:

Appellant respectfully submits that the trial court erred:

. . .

3. In ruling that privity of contract existed between appellant and respondent or is not required to hold appellant liable for breach of any warranties and for failing to dismiss appellant from the law suit because of lack of privity of contract.

This assignment is not in strict compliance with RAP 10.3(g), which requires specific reference to the finding challenged. However, there is no uncertainty as to which finding is in fact challenged since Jet Aeration cites

and sets out the challenged finding in the text of its argument on the issue:

> Also the evidence offered at trial clearly does not support paragraph I of the Findings of Fact which reads as follows:
>
> I.
>
> On or about July 15, 1968, the Plaintiff purchased from the defendant Jet Aeration Company an individual home sewage treatment system.
>
> The evidence clearly indicates the sewage treatment system was purchased from the retailer, Arne Seltveit, and not from appellant.

RAP 1.2(a) makes clear that technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review. In these circumstances, where the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, we will consider the merits of the challenge.

Turning then to the privity question, Jet Aeration's contention is that the evidence demonstrates the purchase was by the installer, Arne Seltveit, who in turn resold the system to Daughtry. The evidence, including the sales invoice and testimony by Seltveit that he charged Daughtry a markup on the product, clearly suggest Seltveit to be an independent intermediary. Some testimony by Daughtry and Seltveit that Seltveit was purchasing the Jet system for Daughtry, suggests an agency relationship. However, the trial court appeared to reject such a theory in its dismissal of the case against Tidrington, the Jet Aeration distributor.[2]

We cannot determine whether the trial court intended to find privity in its statement that Daughtry "purchased" the system from Jet Aeration. The court's comments in denying

---

[2]It may be advanced that the case against Tidrington was dismissed because he was acting solely as an agent for Jet Aeration, and was therefore not liable while his principal was. However, the record reflects no showing of such a strict agency relationship in Tidrington's role as "distributor" for the company's product. Nor do the findings clearly suggest adoption of such a theory by the trial court.

the oral motion rather suggest it did not conclude privity to be a necessary element to the case.

The general rule in this state has been that contractual privity is a requisite to warranty. *Dimoff v. Ernie Majer, Inc.,* 55 Wn.2d 385, 389, 347 P.2d 1056 (1960); *Fleenor v. Erickson,* 35 Wn.2d 891, 898, 215 P.2d 885 (1950); *Berg v. General Motors Corp.,* 87 Wn.2d 584, 594, 555 P.2d 818 (1976) (dictum). Yet, exceptions may be cited where claims essentially sound in tort rather than contract. These include cases of noxious or dangerous products, fraud or deceit in the sale of a product, and negligence in the sale or construction of a product not otherwise dangerous. *Dimoff v. Ernie Majer, Inc., supra,* and *Fleenor v. Erickson, supra.* Most recently we have held no privity is required to obtain recovery for tortious conduct by a remote manufacturer even when only damages for pecuniary loss are claimed. *Berg v. General Motors Corp., supra.*

In *Berg* we noted with approval the case of *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305, 16 A.L.R.3d 670 (1965), a case which respondent urges as a parallel to the instant action. The analogy falls short. In *Santor,* the court held the absence of the retailer in a consumer suit would prove no bar, where the retailer had relocated to a distant state, leaving only the distributor and manufacturer available for suit. Here the plaintiff apparently chose not to sue the intermediary Seltveit, and the court dismissed the case against the distributor for lack of privity. We decline to apply the reasoning of *Santor* to the instant case. Accordingly, privity is necessary to the suit between respondent and petitioner.

The judgment of the Court of Appeals is reversed, and the case is remanded to the trial court for additional findings regarding the running of the statute of limitations, and for a determination, in light of the evidence, as to the existence of a privity relationship between the parties.

STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

ROSELLINI, J. (dissenting)—There is no reason to remand this case, involving a claim for less than $1,000 for additional findings, and the incurring of additional attorney fees. It is plain that the statute of limitations has not run, whether the 3– or 4–year statute applies. With respect to breaches of warranties in sales, RCW 62A.2–725 makes the statute run from the time of discovery of the breach, where a warranty explicitly extends to future performance of the goods, and that is precisely the situation here. The majority acknowledges that the malfunctioning did not begin before 1971. This was the earliest time at which the statute could have commenced to run under that section. If the action be viewed as one in tort, the tort is misrepresentation, which is in the nature of fraud; and RCW 4.16.080(4) provides that in such cases, the statute begins to run at the time of discovery by the aggrieved person of the facts constituting the fraud. So, under either statute, the period of time limitations began to run in 1971. The action was brought in 1973, less than 3 years from the date of discovery. No additional findings are needed to support the trial court's ruling on the defendant's motion to dismiss.

Furthermore, I believe it is immaterial whether there was privity between the plaintiff and the defendant. If the drapes of legalese are pulled aside, it is apparent that this is a products liability case. While the intricacies of modern commerce were developing, this court, endeavoring to do justice to persons injured by products manufactured by a remote seller, struggled to adapt such concepts as those of negligence and warranty to situations in which their logic did not apply. This court, of course, was not alone in the struggle; and eventually scholars of the law, attempting to reconcile the many theories employed to reach a just result, formulated section 402A of the Restatement (Second) of Torts (1965).

We were among the first courts to adopt that formulation as a correct statement of the law in this jurisdiction. In *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969), we reviewed our cases in which consumers had been

allowed to pursue manufacturers on either warranty or negligence theories and concluded that they were in accord with the rules of liability expressed in the Restatement. That rule makes the seller of any product which is in a defective condition, rendering it unreasonably dangerous to the user, liable for physical harm which it may cause, if he is engaged in the business of selling the product and it is expected to and does reach the user or consumer without substantial change in its condition. The rule is made applicable even though the seller has exercised all possible care in the preparation and sale of his products and the user or consumer has not bought the product from him or entered into any contractual relation with him. This court and the Washington Court of Appeals have applied that doctrine many times, the most recent cases being *Terhune v. A.H. Robins Co.*, 90 Wn.2d 9, 577 P.2d 975 (1978); *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 573 P.2d 785 (1978); *Little v. PPG Indus., Inc.*, 19 Wn. App. 812, 579 P.2d 940 (1978); *Potter v. Van Waters & Rogers, Inc.*, 19 Wn. App. 746, 578 P.2d 859 (1978).

The rule of section 402A by its terms applies only to products which may cause physical harm to the user or consumer. A growing number of courts, however, have come to recognize that there is no valid reason why the manufacturer should not be liable to the ultimate consumer for property damage or economic loss which befalls the ultimate consumer in the use of a defective product. The same considerations which prompted the adoption of strict liability with respect to products likely to cause physical harm apply in the case of products likely to cause economic harm or property damage, the only difference being in the type of injury suffered.

We are not concerned in this case with a product which is allegedly defective, however, and I am not suggesting that the court at this time should extend the rule of section 402A to defective products which do not cause physical harm. But I do think the time is appropriate to recognize that where a manufacturer makes express warranties about

his product or places it on the market to be used for a certain purpose, his warranties, express or implied, should run to the consumer, the person who is expected to use the product.

The concept of privity is quite inappropriate in considering the duty of a manufacturer to the ultimate consumer. Even so, it has been held that where the manufacturer makes express representations or warranties about his product which are intended to be and are communicated to the consumer, there is a privity sufficient between the two, even though there are a number of intermediaries through whose hands the product will pass before it reaches the ultimate consumer. The question is annotated in 16 A.L.R.3d 683 (1967). There, at pages 695–96, it is said:

> In cases involving claims for damages other than for personal injury or damage to property other than that purchased, the view has frequently been taken that the purchaser could recover against a remote supplier, notwithstanding the absence of direct contractual relationship between the two, on the theory of breach of an express warranty, where it appeared that the purchaser had, in making the purchase, reasonably relied upon statements in the remote supplier's advertisements, brochures, or similar media.

(Footnotes omitted.) Cases permitting recovery upon express warranties include *Gherna v. Ford Motor Co.,* 246 Cal. App. 2d 639, 55 Cal. Rptr. 94 (1966); *Klein v. Asgrow Seed Co.,* 246 Cal. App. 2d 87, 54 Cal. Rptr. 609 (1966); *B.B.P. Ass'n, Inc. v. Cessna Aircraft Co.,* 91 Idaho 259, 420 P.2d 134 (1966); *Posey v. Ford Motor Co.,* 128 So. 2d 149 (Fla. Ct. App. 1961); *Randy Knitwear, Inc. v. American Cyanamid Co.,* 11 N.Y.2d 5, 181 N.E.2d 399, 226 N.Y.S.2d 363 (1962); *Inglis v. American Motors Corp.,* 3 Ohio St. 2d 132, 209 N.E.2d 583 (1965); *Conestoga Cigar Co. v. Finke,* 144 Pa. 159, 22 A. 868 (1891); *Seely v. White Motor Co.,* 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17 (1965); *Free v. Sluss,* 87 Cal. App. 2d Supp. 933, 197 P.2d 854 (1948); *Smith v. Gates Rubber Co. Sales Div.,* 237 Cal. App. 2d 766, 47 Cal. Rptr. 307 (1965); *Studebaker Corp. v. Nail,* 82

Ga. App. 779, 62 S.E.2d 198 (1950); *Spartanburg Hotel Corp. v. Alexander Smith, Inc.,* 231 S.C. 1, 97 S.E.2d 199 (1957); *United States Pipe & Foundry Co. v. Waco,* 130 Tex. 126, 108 S.W.2d 432, *cert. denied,* 302 U.S. 749, 82 L. Ed. 579, 58 S. Ct. 266 (1937); *L.A. Green Seed Co. v. Williams,* 246 Ark. 463, 438 S.W.2d 717 (1969); *Thomas v. Olin Mathieson Chem. Corp.,* 255 Cal. App. 2d 806, 63 Cal. Rptr. 454 (1967); *Hawkins Constr. Co. v. Matthews Co.,* 190 Neb. 546, 209 N.W.2d 643 (1973); *Ford Motor Co. v. Lemieux Lumber Co.,* 418 S.W.2d 909 (Tex. Civ. App. 1967).

Other courts, including the New Jersey court in *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305, 16 A.L.R.3d 670 (1965), cited in the majority opinion, have gone even further and found implied warranties running from the manufacturer to the ultimate consumer. *See* 16 A.L.R.3d § 6 (1967). The annotaters place Washington among those states which adhere to the antiquated requirement of privity of contract between manufacturer and consumer, citing *Dimoff v. Ernie Majer, Inc.,* 55 Wn.2d 385, 347 P.2d 1056 (1960). That case, of course, was decided before this court recognized the practical reality of the relationship between the manufacturer and the ultimate consumer, and should be overruled.

In a recent case, *Berg v. General Motors Corp.,* 87 Wn.2d 584, 555 P.2d 818 (1976), we had occasion to examine the question whether the loss of profits without any other type of damage is actionable without privity. The arguments pro and con were treated at some length, but we found it unnecessary to decide whether privity would be required if the action were based entirely on warranty, since we determined that the plaintiff was entitled to seek recovery under a theory of negligence. Of course, where negligence is the theory, the remoteness of the seller has never been a concern. That very remoteness, however, makes it exceedingly difficult to prove negligence, which is one of the compelling reasons which have led the courts to adopt the doctrine formulated in Restatement (Second) of Torts § 402A

(1965). Here, the plaintiff has relied solely on his claim of breach of warranty, and so the question is squarely before the court.

In 63 Am. Jur. 2d *Products Liability* § 159 (1972), it is said:

> [P]rior to general enactment of the Uniform Commercial Code, the prevailing view was that there could be no recovery on the theory of breach of warranty, against the manufacturer or seller of a product alleged to have caused injury, where there was no privity of contract between the injured person and the defendant manufacturer or seller.
>
> The effect of the Uniform Commercial Code was to make inroads on the privity requirement, and where the circumstances making these inroads applicable are not present, some jurisdictions (a dwindling number) have adhered to the requirement in products liability actions seeking recovery for harm to person or property. But the marked trend has been to reject the doctrine outright in actions for breach of warranty on behalf of a buyer or user of a defective product against a remote manufacturer or seller, where it is sought to recover for product–caused personal injuries, or property damage, and even, according to some decisions, where the loss for which recovery is sought consists of harm to the product itself or product–caused economic loss. And in many jurisdictions not rejecting the privity requirement outright, the courts have drawn so many exceptions to the requirement as to largely obviate its effect.

(Footnotes omitted.) *See also* 67 Am. Jur. 2d *Sales* §§ 428–29 (1973).

The Uniform Commercial Code deals with express warranties in RCW 62A.2–313, and implied warranties in RCW 62A.2–314–15. The subject is treated further in RCW 62A.2–316–18. Significantly, RCW 62A.2–318 makes warranties, whether express or implied, applicable to any person who can reasonably be expected to use the goods sold. Thus, the notion of privity is tacitly rejected in this section and nowhere in the code is privity expressly made a prerequisite to recovery for breach of warranty. Manufacturers as such are not mentioned.

While it has been suggested that it was not the intent of the code to provide a remedy to the consumer against the manufacturer,[3] the courts which have adopted the doctrine of strict liability with respect to defective products, which now appear to be the majority, of course, have not found the Uniform Commercial Code an impediment. I believe that approach to be entirely justified. Not only is there no code provision expressly dealing with such liability, but the official comment to section 2–313 states:

> 2. Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. They may arise in other appropriate circumstances . . . The provisions of Section 2–318 on third party beneficiaries expressly recognize this case law development within one particular area. Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise.

ALI–Nat'l Conf. of Comm'rs on Uniform State Laws, Uniform Commercial Code § 2–313 (1972 Official Text).

One of those policies, as I read the code, is to reject the notion that privity of contract is necessary in order to recover upon an express warranty, since foreseeability of use is made the criterion for liability in RCW 62A.2–318. Professors Squillante and Fonseca, in 3 *Williston on Sales* § 22–6 (4th ed. 1974), view the drafters' attitude as one of neutrality, leaving the way open for judicial abandonment of the privity requirement. At pages 249–50, they state:

> It is not difficult to understand the Code's neutrality on this particular subject matter. Certainly, the drafters of the Code recognized that it is the atypical consumer who can deal with the seller at a meaningful arm's–length transaction. The normal consumer buys from a retail

---

[3]M. Shanker, *A Case of Judicial Chutzpah (The Judicial Adoption of Strict Tort Products Liability Theory)*, 11 Akron L. Rev. 697 (1978).

seller who is nothing more than an economic conduit for the manufacturer's product. This retail seller is not the manufacturer of the defective product which has injured the consumer. Further, it is not the retail seller who advertises the product on a transnational scale hoping to attract a huge volume of consumers. "We have in our society literally scores of large, financially responsible manufacturers who placed their wares in the stream of commerce not only with the realization, but with the avowed purpose, that these goods will find their way into the hands of the consumer. Only the consumer will use these products; and only the consumer will be injured by them should they prove defective." To permit the manufacturers in this particular situation to escape liability on the legal technicality of lack of privity is to grant them an absolute license which shields them from any impropriety in manufacturing their product and distributing it. In maintaining its neutrality, the drafters have left open the avenue of freedom to develop the case laws to prevent such injustices from arising in each of the individual jurisdictions as the needs of that jurisdiction may dictate.[4]

(Footnote omitted.)

Among the reasons often cited for dispensing with the requirement of privity is the avoidance of circuitous litigation. If the consumer sues his retailer and recovers judgment against him, the retailer may in turn sue the wholesaler, who may in turn sue the manufacturer. There could, of course, be other intermediaries between the manufacturer and the ultimate consumer who would need to be subjected to suit before liability was finally brought to rest where it belongs, that is, upon the head of the manufacturer. While I believe that this is a very persuasive reason for dispensing with the requirement of privity, it would appear that there is an even stronger reason to do so. At any point in the chain of litigation, the court may find that the particular seller made no warranties, in which case the

---

[4]The authors, tracing the history of the development of warranty actions, point out that such actions more properly sound in tort than in contract; and if this is the case, a requirement of privity is entirely inappropriate. *See* 2 A. Squillante & J. Fonseca, *Williston on Sales* §§ 15–1–4 (4th ed. 1974).

manufacturer's liability for breach of his warranty would be avoided altogether.

A majority of the Oregon Supreme Court, in *State ex rel. Western Seed Prod. Corp. v. Campbell,* 250 Ore. 262, 442 P.2d 215 (1968), while permitting a negligence action by a purchaser of sugar beet seeds who suffered crop loss as a result of their defective condition, denied him the right to maintain an action for breach of warranty. In a very thoughtful and scholarly dissent, Justice O'Connell, joined by two other members of the court, pointed out that in an ordinary situation the buyer of a product does not have much freedom to bargain with the seller, either for warranties or for price. He takes the product with the warranties and the price that are attached or he does not get it at all. Justice O'Connell reasoned that the conscience of the community demands that a seller should not be permitted to impose an unfair sale upon those who are not in a position to bargain for the terms of the sale. This, he said, is just another way of expressing the general feeling of the community that one who engages in an activity for gain and who is in a position to dictate the terms of the sale should not be able to disclaim all responsibility to the victim.

I think Justice O'Connell's remarks, which are in accord with those of the authors of the fourth edition of Williston, have particular significance in a case where express representations concerning a product have been made. Not only the avoidance of circuity of litigation but the justice of placing responsibility for a loss upon the party whose product created that loss and to whom the ultimate gain inured makes the imposition of the archaic privity requirement anomalous.

Furthermore, it is much more just to allow the consumer to proceed against the manufacturer than it is to require him to sue the retailer who, in most instances, has little or no knowledge of the attributes of the product, but must himself rely upon the manufacturer's representations. If the product is packaged, he has not even an opportunity to inspect it. The size of many retail establishments and the

variety of products sold therein make it practically impossible to engage in such inspections. When in fact the customer relies upon the label on the package, the advertising of the manufacturer and/or its representations in brochures, as is most often the case, it should be that manufacturer to whom he is permitted or, for that matter, *required* to look for redress.

In the case before the court, according to the findings of fact, the defendant, Jet Aeration Company, warranted to the plaintiff that the home sewage treatment system which it had manufactured would function properly and that the system would take care of the sewage disposal requirement of the plaintiff's property. This finding is supported by documentary evidence which included a brochure and an owner's manual, both of which represented that the system would take care of the purchaser's sewage disposal requirements.

Using the Uniform Commercial Code as a guide, as the legislature has said we should, we must recognize that such representations amount to express warranties. The defendant, as manufacturer of this system, was the one party who was familiar with its capabilities. The plaintiff's experience with the system showed the representations to be false. It is evident that the lower court viewed the distributor and the installer as mere conduits through whom the product reached its intended user, the ultimate consumer. To me, that was a practical view of the relationships of the parties to this transaction.

I would hold that where a manufacturer makes representations by advertising, labeling, brochures or otherwise, concerning the capabilities of his product, an ultimate consumer who finds that the product cannot perform as represented and who suffers loss thereby, whether it be merely the loss of having paid more than the product was worth or consequential damages flowing from its use, should not be relegated to a lawsuit against his immediate seller, who may in fact be innocent of any misrepresentation, but should be

permitted to seek redress against the manufacturer who is, after all, the party ultimately responsible.

Accordingly, I would affirm the Superior Court judgment.

HICKS, J., concurs with ROSELLINI, J.