IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SVETLANA MUZYCHUK, | ) | No. 79262-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VASYL TYSHKOV, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: February 24, 2020 |

ANDRUS, J. — Vasyl Tyshkov challenges the trial court's order that he failed to comply with an order to surrender weapons issued in connection with a domestic violence protection order (DVPO). We affirm.

FACTS

Following an incident at Tyshkov's home on July 11, 2018, Svetlana Muzychuk, Tyshkov's ex-spouse, filed a petition for a DVPO. In the petition, Muzychuk alleged that Tyshkov owned or possessed a firearm, and she requested that the court require Tyshkov to "surrender any firearm or other dangerous weapon, or any concealed pistol license, and prohibit [Tyshkov] from obtaining or possessing a firearm or other dangerous weapon, or a concealed pistol license."

On July 12, 2018, the court entered an ex parte order requiring Tyshkov to "immediately surrender (turn in) all firearms and other dangerous weapons in your

possession or control." Tyshkov filed a proof of surrender, stating that on July 18, 2018, he surrendered an SR 357 BB Pistol serial number 16D24470 to the City of Puyallup Police Department.

The court granted Muzychuk's petition on August 16, 2018, issuing a DVPO and an order requiring Tyshkov to surrender any firearms. The court set a review hearing for September 12, 2018, to determine Tyshkov's compliance with the weapons surrender order. Before the hearing, Tyshkov filed a declaration of non-surrender, certifying that as of July 18, 2018, he had turned in all items covered by the order.

In response, Muzychuk's counsel submitted a declaration with photos of the BB gun Tyshkov turned in to the police. Muzychuk submitted a declaration with three photos of Tyshkov holding various guns (Photos 1, 3, and 4) and a photo of a revolver resting on a table (Photo 2). She identified Photo 1, taken on May 10, 2015, as depicting Tyshkov holding a revolver resembling the surrendered BB gun. She identified Photo 2, also taken on May 10, 2015, as depicting "the same revolver [as Photo 1, this time] on his kitchen table with a baseball cap and a beer bottle." This gun also resembled the surrendered BB gun, but had a different serial number in a different location. Muzychuk identified Photo 3, dated April 22, 2015, as a picture of Tyshkov reclining with a black pistol resting on his chest. And in Photo 4, Muzychuk testified in her declaration that Tyshkov was visible holding a rifle. Muzychuk identified the first three photos as having been saved on Tyshkov's phone, and the last photo as one she copied from Tyshkov's Instagram account, bearing the date of August 10, 2017.

- 2 -

Muzychuk declared the gun in Photos 1 and 2 resembled the same gun she had seen in Tyshkov's house several times. According to Muzychuk, she saw this revolver under Tyshkov's bed on July 11, 2018, and her daughter saw the gun at Tyshkov's home several weeks earlier. She testified that the surrendered BB gun was not the same as the revolver she had seen in Tyshkov's home.

At the review hearing, Tyshkov's counsel stated that Photos 1 and 2 did, in fact, depict a different gun than the BB gun Tyshkov had surrendered to law enforcement. But he claimed the weapon belonged to Tyshkov's close friend, Vasyl Boyko. He represented that Boyko was present in the courtroom and could testify "that the weapon has never left his possession or control and the photographs of that weapon were taken at [his] home in his presence." Tyshkov did not call Boyko to testify.

Tyshkov testified that Boyko owned the gun in Photos 1 and 2. He produced a receipt confirming Boyko's purchase of a Ruger in November 2014, and Tyshkov denied ever having the gun in his home or ever showing it to Muzychuk. He testified that Photos 1 and 2 were taken at Boyko's house. According to Tyshkov, Photo 3 was taken in Ukraine in 2015, and the gun pictured was a plastic BB pistol. He stated he did not currently own the gun, and he had not transported it from Ukraine to the United States. He stated that Photo 4, taken in Lincoln, Nebraska, two years earlier, depicted a plastic BB gun, not a real weapon. According to Tyshkov, the gun belonged to his cousin's children, and it had never been present in Washington. He testified he had never owned a firearm in Washington.

The court found by a preponderance of the evidence that Tyshkov had not complied with the order to surrender weapons.

Tyshkov moved for reconsideration under CR 59(a)(1), (3), (4), and (7), and to alter or amend the judgment under CR 59(h), asking the court to make findings specifying in what way he had not complied with the order to surrender. The court denied the motion to reconsider, granted the request for clarification, and entered amended findings. The court found:

1.9 Other:

A. Court finds by a preponderance [of evidence] that [the restrained party] has not shown compliance[.]

B. The restrained party has possessed or controlled at least three firearms as shown in his photographs.

C. The restrained party has not surrendered any of the firearms he has controlled or possessed, except a bb pistol surrendered on July 18, 2018 to the Puyallup Police Department.

D. A friend of the restrained party apparently purchased a Ruger in November 2014. The restrained party possessed and controlled that Ruger in 2015 as evidenced by his photograph showing the Ruger on restrained party's kitchen table and his photograph with the firearm in the restrained party's hand, with his finger on the trigger. The restrained party held and carried around his house the same Ruger on Christmas in 2017, and kept the Ruger under his bed where it was seen in May or June 2018 and again on July 11, 2018.

E. The restrained party did not provide evidence of a lawful transfer of the Ruger or any other firearm, as required by RCW 9.41.113.

F. The restrained party did not possess a concealed pistol license.

Tyshkov appeals.

ANALYSIS

Tyshkov challenges finding 1.9(E) that he did not provide evidence that he transferred his weapons pursuant to RCW 9.41.113. He also challenges the

- 4 -

court's conclusion that he failed to comply with the weapons surrender order.[1] We reject both arguments.

Under RCW 9.41.800(3), when a court issues a DVPO that meets certain statutory conditions, the court must order the restrained person to surrender all firearms and other dangerous weapons. Braatz v. Braatz, 2 Wn. App. 2d 889, 895, 897-98, 413 P.3d 612, review denied, 190 Wn.2d 1031, 421 P.3d 445 (2018). A party ordered to surrender weapons must file "a proof of surrender and receipt form" within five days of the entry of the order. RCW 9.41.804. The restrained party bears the burden of proving by a preponderance of evidence that he has surrendered all firearms and other dangerous weapons. Braatz, 2 Wn. App. 2d at 898. A proof of surrender, such as Tyshkov filed, serves as prima facie evidence that the party has complied with the court order. Id. at 898-99. But when the record contains conflicting evidence, the court must weigh that evidence and determine whether the restrained party has met his burden of proof. Id. at 899.

We review challenges to the trial court's findings in this case for substantial evidence. Id. "Evidence is 'substantial' where it is 'sufficient to persuade a rational fair-minded person the premise is true.'" Id. (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). We review a trial court's denial of a motion for reconsideration for an abuse of discretion. McCallum v. Allstate Prop. & Cas. Ins. Co., 149 Wn. App. 412, 419-20, 204 P.3d 944 (2009).

---

[1] Muzychuk contends Tyshkov did not properly assign error to the trial court's findings and conclusions as required under RAP 10.3(g). We conclude the assignments of error and briefing are adequate for the court to consider the merits of Tyshkov's appeal. See Daughtry v. Jet Aeration Co., 91 Wn.2d 704, 710, 592 P.2d 631 (1979) ("[W]here the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, we will consider the merits of the challenge.").

Tyshkov contends the trial court erred in finding that he failed to comply with RCW 9.41.113 because the order entered on August 16, 2018, did not impose this requirement on him. The pattern form the court used in this case gave the court two options—to order the restrained party (1) to surrender weapons to law enforcement; or (2) to transfer the weapons to "[an]other person designated by the court who is not prohibited from possessing or obtaining any firearms . . . [and] other dangerous weapons, . . . who agrees to comply with the background check required by RCW 9.41.113 . . . ." In Tyshkov's case, the second option was crossed out. The order required Tyskhov to turn his weapons in to the King County Sheriff or other local law enforcement. Tyshkov is thus correct that the August 2016 order did not require him to transfer his weapons under RCW 9.41.113.

But Tyshkov misinterprets the court's finding regarding RCW 9.41.113.[2] The court found that Tyshkov had possessed or controlled three weapons and that he had not turned these weapons in to law enforcement. And while he claimed these weapons belonged to someone else, the court found Tyshkov presented no evidence either that Boyko had lawfully transferred these weapons to Tyshkov or that Tyshkov had lawfully returned them to their owner, as required by RCW 9.41.113. Without this evidence, it was reasonable for the court to find that Tyshkov still had the weapons in his possession.

The record contains conflicting evidence regarding Tyshkov's possession or control of these three weapons. There was photographic evidence of Tyshkov holding the firearms—none of which were the BB gun surrendered to authorities.

---

[2] RCW 9.41.113(3) provides that any transfer of a firearm from one person to another (i.e., from Tyshkov to Boyko) must occur through a licensed firearm dealer.

According to Muzychuk, she saw at least one of these weapons in Tyshkov's hand and under his bed shortly before she sought the DVPO. And there was no evidence Tyshkov had lawfully transferred these weapons to someone else.

Although Tyshkov testified the weapons were never in his possession or control, the court was free to reject this testimony as not credible. Local trial judges, who decide factual domestic relations questions on a regular basis, are better equipped to weigh the evidence, resolve conflicts, and make credibility determinations based on affidavits and testimony because they can observe demeanor and related factors. In re Marriage of Rideout, 150 Wn.2d 337, 351-52, 77 P.3d 1174 (2003) (quoting In re Parentage of Jannot, 149 Wn.2d 123, 126, 65 P.3d 664 (2003)). Credibility determinations are solely for the trier of fact and are not reviewable on appeal. Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003). The court expressly found Muzychuk credible. We will not disturb this finding on appeal.

We conclude there was substantial evidence supporting the court's finding that Tyshkov remained in possession of firearms at the time of his compliance hearing, and this finding supports the court's conclusion that he failed to comply with the order to surrender weapons.

Muzychuk requests an award of attorney fees on appeal. Washington courts may only award attorney fees "when doing so is authorized by a contract provision, a statute, or a recognized ground in equity." King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017). Under RCW 26.50.060(1)(g), a trial court may order the restrained

person to "reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." This statute gives us the discretion to award attorney fees on appeal to a party who has obtained a protection order under chapter 26.50 RCW. In re Gourley, 124 Wn. App. 52, 59, 98 P.3d 816 (2004); see also Aiken v. Aiken, 187 Wn.2d 491, 506, 387 P.3d 680 (2017). This statute applies to an appeal of a weapons surrender order issued in conjunction with a DVPO. RCW 26.50.060(1)(k) (relief available under a DVPO includes an order requiring the restrained party to surrender weapons). We exercise our discretion and grant Muzychuk her reasonable attorney fees and costs on appeal, if properly requested under RAP 18.1(d).

Affirmed.

WE CONCUR:

_Andrus, J._

_Smith, J._